Cɪᴛʏ ᴏꜰ Wᴀᴜꜱᴀᴜ, Plaintiff-Respondent,

v.

Zack S. Jᴜꜱᴜꜰɪ, Defendant-Appellant.†

Court of Appeals

*No. 2008AP1107. Submitted on briefs October 21, 2008.*
*—Decided December 2, 2008.*

2009 WI App 17

(Also reported in 763 N.W.2d 201.)

† Petition to review denied 2/10/09.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *James Kurth*, of *James Kurth, S.C.*, Wausau.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Anne L. Jacobson*, assistant city attorney of Wausau.

Before Hoover, P.J., Peterson and Brunner, JJ.[1]

¶ 1. BRUNNER, J. Zack Jusufi appeals a circuit court judgment finding him guilty of two municipal ordinance violations for failing to enforce the City of Wausau's restaurant smoking ban within his restaurant. Jusufi contends the City's ordinance banning smoking in restaurants is unconstitutional. Specifically, he argues the ordinance's differential treatment of restaurants and private clubs violates equal protection. Because there is a rational basis for the ordinance's classification and differential treatment of restaurants and private clubs, we affirm the judgment.

## BACKGROUND

¶ 2. Jusufi operates a restaurant known as the Red Apple Social Club. To enter and be served in the Club, membership is required. Membership is obtained by paying a one-time membership fee of one dollar. The membership fees are donated to charity. The Club also performs other charitable functions, such as fundraisers. The Club has a twelve-member board of directors that assists with the selection of activities and donation of charitable funds.

¶ 3. On July 20, 2005, WAUSAU, WI, MUNICIPAL CODE ch. 9.40 became effective. Section 9.40.020 prohibits smoking in restaurants, but provides exceptions for, among other things, private clubs.[2] Section 9.40.010(c) defines private clubs:

---

[1] The Chief Judge of the court of appeals, on the court's own motion, concluded that this appeal should be decided by a three-judge panel; the order was dated September 16, 2008. *See* WIS. STAT. RULE 809.41(3)(a) (2005–06).

[2] Other exceptions include: restaurants whose sale of alcohol, when compared to food sales, accounts for more than 50%

"Private club" means an organization, whether incorporated or not, which is the owner, lessee or occupant of a building or portion thereof used for club purposes, which is operated solely for a recreational, fraternal, social, patriotic, political, benevolent or athletic purpose but not for pecuniary gain and which only sells alcohol beverages incidental to its operation. The affairs and management of the private club are conducted by a board of directors, executive committee or similar body chosen by the members at an annual meeting. The private club has established bylaws and/or a constitution to govern the club's activities. The private club has been granted an exemption from the payment of federal income tax as a club under 26 U.S.C.A. Section 501. When a private club is open to the public, it does not meet this definition. (Internal ordinance references omitted.)

Thus, to be a private club under the ordinance, an organization must not be operated for profit and must not be open to nonmembers. Additionally, § 9.40.060 of the ordinance requires restaurant owners and managers to enforce the smoking ban within their restaurants.

¶ 4. On August 22, 2005, police officers visited the Club. Upon entering, the officers discovered people smoking. Jusufi was cited for failing to enforce the smoking ban within his restaurant. A few days later, on August 25, officers again entered the Club and found a patron smoking. Jusufi was again cited for failing to enforce the smoking ban.

¶ 5. In Wausau's municipal court, Jusufi moved to dismiss the citations, contending the ordinance's definition of private clubs as non-profit was without a

of gross receipts; bowling centers; and restaurants that demonstrate hardship by showing a specified reduction in gross receipts following compliance with the ordinance.

rational basis in violation of his equal protection rights under the United States and Wisconsin Constitutions. The municipal court rejected Jusufi's constitutional challenge and found him guilty of the ordinance violations following a trial.

¶ 6.   Jusufi appealed, seeking a new trial in the circuit court. He moved for summary judgment based on his constitutional challenge. The circuit court denied the motion. The court concluded a rational basis existed for the ordinance's classification and treatment of restaurants and private clubs. The court identified the rational basis as follows:

> Here, the ordinance requires all restaurants that are open to the public to be smoke free. Private clubs are, by their very nature, not open to the public, and do not present the same threat to public health. Limiting the exception to private clubs that are non-profit and have tax-exempt status is a reasonable means of keeping the number of places that qualify for the exception small, thereby protecting a greater percentage of the dining public; it also prevents restaurants that are open to the public from avoiding the reach of the ordinance by charging a nominal membership fee and declaring themselves to be private clubs.

After a court trial, Jusufi was found guilty of the ordinance violations.

## DISCUSSION

■ ■
¶ 7.   A challenge to the constitutionality of an ordinance presents a question of law that we review de novo. *See Wilke v. City of Appleton*, 197 Wis. 2d 717, 726, 541 N.W.2d 198 (Ct. App. 1995). Ordinances are

presumed constitutional, and the unconstitutionality of an ordinance must be proven beyond a reasonable doubt. *Id.*

¶ 8. To prevail in an equal protection challenge, Jusufi must show the ordinance unconstitutionally treats members of similarly situated classes differently. *Nankin v. Village of Shorewood*, 2001 WI 92, ¶ 11, 245 Wis. 2d 86, 630 N.W.2d 141. That a classification scheme results in inequity is not a sufficient basis for invalidating it. *Id.*, ¶ 12. Equal protection "does not deny a state the power to treat persons within its jurisdiction differently . . . ." *Id.* (citations omitted).

¶ 9. If the ordinance does not involve a suspect class or a fundamental interest, the classification will be sustained if there is any rational basis to support it. *See id.*, ¶ 11. When determining whether a rational basis exists, we first examine whether the legislative body articulated a rational basis. *Id.*, ¶ 12. If we cannot identify an articulated rationale, we are obligated to construct one. *Id.* A legislative classification will survive the rational basis standard if it meets the following criteria:

> (1) All classification[s] must be based upon substantial distinctions which make one class really different from another.
>
> (2) The classification adopted must be germane to the purpose of the law.
>
> (3) The classification must not be based upon existing circumstances only. [It must not be so constituted as to preclude addition to the numbers included within the class].

(4) To whatever class a law may apply, it must apply equally to each member thereof.

(5) That the characteristics of each class should be so far different from those of other classes as to reasonably suggest at least the propriety, having regard to the public good, of substantially different legislation.

*Id.*, ¶ 39 (citation omitted).

¶ 10.   Here, it is undisputed that no fundamental interest or suspect class is implicated and therefore the rational basis standard applies. *See id.*, ¶¶ 11–12. Further, while the legislative body's purpose in enacting the ordinance was to protect the public from secondhand smoke in restaurants, it is undisputed that no rationale was articulated for defining private clubs as non-profit clubs only. Thus, whether a rational basis exists for the ordinance's classification scheme depends on whether we can construct one. *See id.*, ¶ 12.

¶ 11.   Of the five criteria that must be satisfied for a rational basis to exist, Jusufi does not articulate which criteria are not satisfied. Instead, he generically argues there is no rational basis for the ordinance's classification scheme. We construe Jusufi's argument as possibly implicating the first, second, and fifth criteria:   all classifications must be based on substantial distinctions that make one class really different from another; the classification must be germane to the purpose of the law; and the characteristics of each class should be so far different from those of other classes as to reasonably suggest at least the propriety, having regard for the public good, of substantially different legislation. *See id.*, ¶ 39.

¶ 12.   Because we conclude these criteria are satisfied here, we reject Jusufi's challenge to the constitu-

tionality of the ordinance. Jusufi carries the heavy burden of proving the ordinance unconstitutional beyond a reasonable doubt. *See id.*, ¶¶ 10–12. His argument begins by suggesting there is a rational basis for treating both for-profit and non-profit clubs differently from other restaurants, which is that "non smokers and those who wish to avoid second-hand smoke are not required to belong to or frequent a private club."[3] However, he asserts there is no conceivable basis for treating "virtually identical" for-profit and non-profit clubs differently.

¶ 13.   We first note that Jusufi's argument loses sight of the ordinance's classifications. On its face, the ordinance does not independently classify for-profit and non-profit clubs. Instead, the ordinance distinguishes between restaurants and private clubs, with private clubs being defined as non-profit. Therefore, in the context of the ordinance's classifications, Jusufi's argument is that there is no rational basis for defining private clubs as non-profit only.

¶ 14.   The circuit court identified a rational basis for the ordinance's classifications, and we agree with the court's reasoning. The ordinance's method of distin-

---

[3] Jusufi derives this rationale from our decision in *Rossie v. Department of Revenue*, 133 Wis. 2d 341, 395 N.W.2d 801 (Ct. App. 1986). In *Rossie*, we rejected an equal protection challenge to the Clean Indoor Air Act, which regulates smoking in certain buildings, with some exceptions. *See id.* at 356–57; *see also* Wis. Stat. § 101.123 (2005–06). We concluded that

> the areas excepted from the ban, for the most part, do not present the same degree of risk to nonsmokers because those places can be avoided without great inconvenience to the nonsmoker, because nonsmokers are not present, or because the plenary authority of those in charge makes state regulation of smoking unnecessary.

*Rossie*, 133 Wis. at 355.

guishing private clubs from other restaurants seeks to protect the greatest number of restaurant patrons, while preserving the right to associate in truly private clubs that are not open to the public.

¶ 15.  Absent the ordinance's narrow definition of private clubs as non-profit organizations controlled by their members, ordinary for-profit restaurants seeking the public's patronage would be able to avoid enforcement of the smoking ban by instituting a few formalities. Restaurants could create the illusion of private clubs by creating memberships with no meaningful membership criteria. The memberships would essentially be shams, with members having no control over, or stake in, the restaurant's operations. As such, the restaurants could identify themselves as private clubs, while remaining open to the public.

¶ 16.  Jusufi's restaurant is a case in point. The dining public's only barrier to patronizing the Club is a one-dollar, one-time membership fee. The Club further created the appearance of member-management by forming a board of directors. It appears, however, the Club's board of directors has no control over the Club's restaurant business. While the Club's charitable activities are commendable, the Club is still a restaurant that is effectively open to the public. In other words, as related to the smoking ban, Jusufi's "private club" is essentially a sham. Contrary to Jusufi's argument, his for-profit restaurant is not "virtually identical" to the private clubs defined by, and intended to be excluded from, the ordinance's smoking ban. Instead, his restaurant's customers are those the smoking ban is designed to protect.

¶ 17.  Jusufi's case demonstrates precisely why the City was justified in classifying and treating restaurants and private clubs differently. *See Nankin,* 245

Wis. 2d 86, ¶¶ 39–40. Further, in light of the ordinance's purpose of protecting the dining public from secondhand smoke, the ordinance's narrow definition of private clubs is also germane to the purpose of the law. *See id.*, ¶ 40. Because the ordinance satisfies the applicable criteria to establish a rational basis, Jusufi's constitutional challenge fails.

*By the Court.*—Judgment affirmed.