STATE FARM FIRE AND
CASUALTY COMPANY,
Plaintiff-Appellant,

v.

HAGUE QUALITY WATER, International
and The Cincinnatti Insurance Company,
Defendants-Respondents.†

Court of Appeals

*No. 2012AP392. Oral argument October 17, 2012.
—Decided December 12, 2012.*

2013 WI App 10

(Also reported in 826 N.W.2d 412.)

† Petition for Review Filed.

743

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Monte E. Weiss* of *Deutch & Weiss, LLC*, Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Jason P. Gehring* of *Kasdorf, Lewis & Swietlik, S.C.*, Milwaukee.

Before Brown, C.J., Reilly and Gundrum, JJ.

¶ 1.   REILLY, J.   Larry Krueger purchased a water softener from Menards and installed it in a house he owned. The water softener was manufactured by Hague Quality Water, International and had a limited warranty. The warranty provided that in the event of a defect, Hague would repair or replace the defective parts but would not be responsible for any "incidental, consequential or secondary damages."

¶ 2. The water softener is alleged to have failed two years after its purchase by Krueger, causing nearly $45,000 in damage to the drywall, flooring, and woodwork in Krueger's home. Krueger's loss was covered by Krueger's homeowners insurance policy issued by State Farm Fire and Casualty Company. State Farm filed suit against Hague and its insurer, The Cincinnati Insurance Company, alleging solely tort claims for the defective water softener. The circuit court dismissed State Farm's complaint on the grounds that the economic loss doctrine barred recovery. We reverse the circuit court as the economic loss doctrine does not bar tort claims when the loss is to "other property."

## BACKGROUND

¶ 3. A little more than two years after he purchased and installed the Hague-manufactured water softener, Krueger discovered water pouring out of his house. Upon entering the house, Krueger saw a half-inch of water covering the floor and more water "gushing out" of the water softener. The water damaged drywall, flooring, and woodwork and triggered repairs that included cleaning, water extraction, and electrical work. The damage was covered by Krueger's State Farm insurance policy. State Farm subsequently sued Hague for negligence and products liability, seeking to collect the money expended on the repairs to Krueger's home.

¶ 4. Hague[1] moved for summary judgment, contending that all of State Farm's damages were economic and, therefore, precluded by the economic loss doctrine. The circuit court agreed and dismissed the complaint. State Farm appeals.

---

[1] Any reference made to legal arguments by both Hague and its insurer, Cincinnati Insurance, will be referred to as arguments made by Hague. Any references to Hague as the manufacturer of the water softener are to Hague alone.

## STANDARD OF REVIEW

¶ 5. Summary judgment is appropriate when there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2) (2009–10). We review independently the decision of a circuit court to grant or deny summary judgment. *Marnholtz v. Church Mut. Ins. Co.*, 2012 WI App 53, ¶ 6, 341 Wis. 2d 478, 815 N.W.2d 708.

## DISCUSSION

¶ 6. Wisconsin courts employ the economic loss doctrine to bar the recovery of purely economic losses in consumer transactions through tort remedies where the only damage is to the product purchased by the consumer. *State Farm Mut. Auto. Ins. Co. v. Ford Motor Co.*, 225 Wis. 2d 305, 341, 348, 592 N.W.2d 201 (1999). When a defect in the product causes personal injury or damage to "other property," however, tort theories may permit recovery for economic losses. *Wausau Tile, Inc. v. County Concrete Corp.*, 226 Wis. 2d 235, 247, 593 N.W.2d 445 (1999). Wisconsin courts apply a two-part analysis to determine whether damaged property constitutes "other property" so as to trigger the possibility of tort recovery. *Foremost Farms USA Coop. v. Performance Process, Inc. (Foremost I)*, 2006 WI App 246, ¶ 25, 297 Wis. 2d 724, 726 N.W.2d 289.

¶ 7. First, courts consider whether the defective product and the damaged property are part of an "integrated system." *Id.* If the damaged property is part of an integrated system with the defective product, any

damage to that property is considered to be damage to the product itself. *Id.*, ¶¶ 15–16. If the damaged property is not part of an integrated system with the defective product, then courts apply the "disappointed expectations" test by focusing on the expected function of the product and whether the purchaser should have foreseen that the product could cause the damage at issue. *Id.*, ¶¶ 16–17. The damaged property must survive both the "integrated system" and "disappointed expectations" tests to be considered "other property" for a tort claim to survive summary judgment. *See id.*, ¶ 14.

*Integrated System Test*

¶ 8.    The integrated system test looks "to see whether the allegedly defective product is a component in a larger system." *Id.*, ¶ 15. "If a product has no function apart from its value as part of a larger system, the larger system and its component parts are not 'other property.' " *Id.* Our case law contemplates that the defective product must be an "integral" part of the larger system that includes the damaged property for the two to be considered parts of an integrated system. *See Wausau Tile*, 226 Wis. 2d at 251.

¶ 9.    Therefore, a defective product must be integral to the function of the damaged property before the defective product and the damaged property may be considered part of the same integrated system. We conclude that the damaged property in this action—the drywall, flooring, and woodwork—are not part of an integrated system with the water softener.

¶ 10.    In *Wausau Tile*, the defective product was cement that was an ingredient of the pavers that were alleged to have been damaged. *Id.* at 251–52. Incorpo-

rating the cement was integral to the creation of the final product: the pavers. *See id.* In *Cincinnati Insurance Co. v. AM International, Inc.*, 224 Wis. 2d 456, 591 N.W.2d 869 (Ct. App. 1999), the defective product was a replacement gear that damaged a printing press. *Id.* at 463. The gear was integral as it drove a drum that transferred sheets on the printing press. *Id.* at 459–460. Windows are an "integral" part of a home, such that damage to nearby siding and surrounding casements is not damage to "other property" for purposes of the economic loss doctrine. *See Selzer v. Brunsell Bros.*, 2002 WI App 232, ¶ 35, 257 Wis. 2d 809, 652 N.W.2d 806; *Bay Breeze Condo. Ass'n v. Norco Windows, Inc.*, 2002 WI App 205, ¶ 27, 257 Wis. 2d 511, 651 N.W.2d 738.

¶ 11.  In each of the above examples, the defective product was an integral part of the property that ultimately was damaged such that the damaged property was unable to function without that product.

¶ 12.  In contrast, the water softener at issue in this case was not integral to the functioning of Krueger's drywall, flooring, and woodwork. Unlike the leaky windows in *Bay Breeze*, there was no "integral relationship" between the water softener and the damaged drywall, flooring, and woodwork in Krueger's home. *See id.*, 257 Wis. 2d 511, ¶ 27. Accordingly, as a water softener has no functional link to the drywall, flooring, and woodwork of a home, we hold that the water softener and damaged drywall, flooring, and woodwork are not part of an integrated system.

*Disappointed Expectations Test*

¶ 13.  We next consider whether the water softener's failure was a "disappointed expectation" of

749

the product. Under the "disappointed expectations" test, the economic loss doctrine precludes tort recovery if "prevention of the subject risk was one of the contractual expectations motivating the purchase of the defective product." *Grams v. Milk Prods., Inc.*, 2005 WI 112, ¶ 43, 283 Wis. 2d 511, 699 N.W.2d 167 (citation omitted). "If a product is expected and intended to interact with other products and property," *id.*, ¶ 47, and if the cause of the damage to those other products and property stems from "the parties' expectations of the function of the bargained-for product," *id.*, ¶ 32, then recovery in tort is precluded.

¶ 14.   The first step of the test revolves around the expectations of the consumer, "necessitat[ing] an inquiry into the substance and the purpose of the transaction." *Id.*, ¶ 50. "The next step is to inquire whether the [plaintiff's] claim is about disappointment with those expectations." *Id.*, ¶ 51. The applicability of the economic loss doctrine under this test "could turn on the purpose for purchasing the product, the reasonableness of anticipating a risk of the product's failed performance, the availability of warranties or risk sharing mechanisms, and the extremity of the facts." *Id.*, ¶ 40.

¶ 15.   Our courts have found that customers who purchased livestock feed and feed systems that killed their livestock could not recover in a tort action as their damages stemmed from their disappointment that the products they purchased did not improve their animals' nutrition and health. *See id.*, ¶ 55; *D'Huyvetter v. A.O. Smith Harvestore Prods.*, 164 Wis. 2d 306, 328, 475 N.W.2d 587 (Ct. App. 1991). Similarly, a homeowner who bought windows claiming to have been treated to prevent rot that eventually led to rot not only in themselves but also in surrounding siding could not sue

in tort as the claims were due to the disappointment that the windows did not perform as expected in preventing rot. *Selzer*, 257 Wis. 2d 809, ¶ 37.

¶ 16. Here, however, the alleged failure of Krueger's water softener did not have anything to do with the purpose for which the water softener was purchased. State Farm did not sue to recover for the damages caused as a result of defective water softening. State Farm sued because Hague's product developed a leak and flooded Krueger's home. The drywall, flooring, and woodwork were not damaged by a failure of the water softener to soften water but by a defect independent of the water softener's function of softening water. The interaction between the water softener and the damaged property was as a result of a defect wholly separate from the water softener's function as a machine that softens a home's water.

■■

¶ 17. Hague argues that a reasonable purchaser of its water softener should have foreseen the risk of water leaking from its product, and therefore, a consumer cannot be disappointed when a leak happens. Hague's argument is misplaced for two reasons: (1) it confuses reasonable foreseeability with foreseeable interaction contrary to *Foremost I*, 297 Wis. 2d 724, ¶ 20, and (2) it focuses on a defect that results from the process used to perform a function rather than a defect in the function of the product itself. In *Foremost I*, we specifically disclaimed equating reasonable foreseeability (whether a reasonable purchaser in the plaintiff's position should have foreseen the risk) with foreseeable interaction between the purchased product and the damaged property. *Id.*, ¶¶ 19–20. We cautioned against reading the disappointed expectations test to encompass "any time a purchaser knows a product will come

into some sort of contact with other property . . . ." *Id.*, ¶ 20. Although foreseeable interaction is a factor that may be considered, without more, it is insufficient. *See id.*, ¶ 21.

¶ 18.   There is no evidence that, as part of its function as a water softener, the water softener was "expected and intended to interact with" the drywall, flooring, and woodwork that was damaged in this case. *See Grams*, 283 Wis. 2d 511, ¶ 47. The water softener is not alleged to have damaged property as a result of not providing adequate softening of the home's water. By focusing on the foreseeability of a malfunction in the process that the water softener uses to treat water, Hague ignores the requirement of the disappointed expectations test that the defect be related to the purpose of the product's purchase. The purpose of buying a water softener is to soften one's water. Tort recovery is not precluded in this action as the water softener was not expected, nor intended, to interact with the drywall, flooring, and woodwork of Krueger's home. Further, the cause of the damage to the home's drywall, flooring, and woodwork did not stem from a disappointment in how Krueger and Hague expected the water softener to function in softening Krueger's water.

## CONCLUSION

¶ 19.   The economic loss doctrine does not preclude tort claims in this action as a water softener is not part of an integrated system with drywall, flooring, and woodwork, and a water softener that leaks is not a disappointed expectation related to the purpose of its purchase.

*By the Court.*—Order reversed and cause remanded for further proceedings.