IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 116,307

CORVIAS MILITARY LIVING, LLC, and
CORVIAS MILITARY CONSTRUCTION, LLC,
*Appellants*,

v.

VENTAMATIC, LTD., and JAKEL, INC.,
*Appellees*.

SYLLABUS BY THE COURT

1.

The Kansas Product Liability Act (KPLA), K.S.A. 60-3301 et seq., codifies a modified version of the common-law economic loss doctrine. In a product liability cause of action, the KPLA excludes recovery of damages for any "direct or consequential economic loss" but permits a plaintiff to recover damages for any damage to property. K.S.A. 60-3302(d). This includes damage to the product itself.

2.

Because the KPLA excludes from the scope of a product liability cause of action any claim to recover direct or consequential economic loss, the KPLA does not subsume or extinguish any legally viable alternative cause of action seeking recovery for direct or consequential economic loss.

Review of the judgment of the Court of Appeals in 54 Kan. App. 2d 169, 397 P.3d 441 (2017). Appeal from Geary District Court; BENJAMIN J. SEXTON, judge. Opinion filed October 25, 2019. Judgment of the Court of Appeals reversing the district court is affirmed in part and reversed in part. Judgment of the district court is affirmed in part, reversed in part, and remanded with directions.

*Charles L. Philbrick*, pro hac vice, of Rathje & Woodward, LLC, of Wheaton, Illinois, argued the cause, and *William J. Bahr*, of Arthur-Green, LLP, of Manhattan, was with him on the briefs for appellants.

*Seth A. Lowry*, of Fisher, Patterson, Sayler & Smith, L.L.P., of Topeka, argued the cause, and *James P. Nordstrom*, of the same firm, was with him on the briefs for appellee Ventamatic, Ltd.

*David E. Rogers*, of Foulston Siefkin LLP, of Wichita, argued the cause, and *Daniel J. Buller*, of the same firm, was with him on the briefs for appellee Jakel Motors, Inc.

The opinion of the court was delivered by

STEGALL, J.:  The plaintiffs in this lawsuit—Corvias Military Living, LLC, and Corvias Military Construction, LLC—collectively form a construction firm specializing in building military housing. Corvias built thousands of homes near Fort Riley in Geary County. In these homes, Corvias installed bathroom ceiling fans constructed by the defendants—Ventamatic, Ltd., and Jakel Motors, Inc. After installation, several of the ceiling fans caught fire and damaged several homes. Corvias then sought to mitigate further damage by removing and replacing the remaining fans. This lawsuit followed.

The district court entered summary judgment against Corvias, holding that the economic loss doctrine barred Corvias from recovery. Corvias appealed, and the Court of Appeals reversed. The panel reasoned that the economic loss doctrine did not bar Corvias from asserting a product liability claim because the property damage to the homes was not economic loss. We granted review.

FACTUAL AND PROCEDURAL BACKGROUND

Corvias is a military housing developer that built and now manages privatized family housing at Fort Riley, Kansas. During the construction phase, Corvias, through its

subcontractors, purchased and installed approximately 3,785 "NuVent" bathroom ceiling fans into the Fort Riley homes. Ventamatic manufactures the NuVent model bathroom exhaust fans, and some of these fans were built with electric motors manufactured by Jakel.

On June 12, 2012, a fire occurred in one of the homes. A defective electrical motor in a NuVent bathroom exhaust fan allegedly caused the fire. Corvias claims the fire caused $656.26 in damage. Then, another fire occurred in a different housing unit constructed by Corvias. Again, a defective electrical motor in a NuVent bathroom exhaust fan allegedly caused the fire. This fire caused extensive damage to the home including walls, ceiling, rafters, artwork, and personal property of the tenants. Additionally, the fire caused damage to the adjoining townhome. In total, this fire caused $88,994 in damages.

But the fires were not the only problem Corvias had with the NuVent fans. Before the fires, Corvias allegedly experienced over 100 failed NuVent fans. So, following the second fire, Corvias removed the remaining 3,783 NuVent fans from its housing units and replaced them with a new brand of bathroom fans. This removal and replacement of the fans cost an estimated $459,027.

Corvias filed suit in Geary County District Court against Ventamatic, Jakel, and four other defendants. In Corvias' amended petition, Corvias asserted: (1) a product liability claim under the Kansas Product Liability Act; (2) claims for breaches of express and implied warranties of merchantability; (3) an unjust enrichment claim; (4) a claim under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq.; and (5) breach of contract. Corvias sought $459,027.26 in damages for the removal and replacement of the 3,783 NuVent fans and $50,000 for property damage associated with the two fires—the amount of its insurance deductible.

3

Corvias voluntarily dismissed its claims against the four other defendants—including all its breach of contract claims—with prejudice. Ventamatic and Jakel filed motions for summary judgment arguing the economic loss doctrine barred Corvias' product liability claims because the damages incurred were purely economic. Ventamatic also argued Corvias' warranty claims were barred because the express one-year warranty had lapsed and the parties lacked privity.

The district court granted summary judgment to both Ventamatic and Jakel. The district court began by noting that the Kansas Product Liability Act (KPLA) governs all product liability claims in Kansas. The district court determined, therefore, that "the only claim plaintiffs brought against Ventamatic in this lawsuit is a product liability claim—regardless of how plaintiffs may have previously denominated their causes of action."

The district court then held that the economic loss doctrine barred Corvias from recovering its removal and replacement costs. The district court noted that under *Northwest Arkansas Masonry, Inc. v. Summit Specialty Products, Inc.*, 29 Kan. App. 2d 735, 31 P.3d 982 (2001), removal and replacement costs fell under the economic loss doctrine. And because Corvias did not dispute that these costs were economic losses, the court held that the economic loss doctrine barred Corvias from recovering.

The district court also held that the economic loss doctrine barred Corvias from recovering for any loss caused by the fires. The district court relied on the "integrated systems" rule to find the fire damage was likewise an economic loss not recoverable in a products liability claim. The integrated systems rule was adopted by the Kansas Court of Appeals in *Northwest Arkansas Masonry, Inc*., and posits that "'[d]amage by a defective component of an integrated system to either the system as a whole or other system components is not damage to "other property" which precludes the application of the economic loss doctrine.'" 29 Kan. App. 2d at 744 (quoting *Wausau Tile, Inc. v. County Concrete Corp.*, 226 Wis. 2d 235, 249, 593 N.W.2d 445 [1999]).

4

Applying this rule, the lower court reasoned that the fire damage to the homes was actually damage to the product itself and must therefore be considered a nonrecoverable economic loss. The district court considered the NuVent fans "integrated" component parts of the home—the home itself being the integrated system. Because the district court viewed the lawsuit as exclusively sounding in product liability, and because the court further found all purported damages to be economic losses, the court granted summary judgment in favor of Ventamatic and Jakel. Corvias appealed.

On appeal, the Court of Appeals ably summarized the common-law development of the economic loss doctrine in Kansas:

"Economic loss is defined as 'loss of use of the defective product, cost of replacing the product, loss of profits to plaintiff's business, or damage to plaintiff's business reputation from use of the product.' *Elite Professionals, Inc. v. Carrier Corp.*, 16 Kan. App. 2d 625, 633, 827 P.2d 1195 (1992). Economic loss includes the 'loss of the bargain, repair, and replacement cost, loss of profits, and/or goodwill, including diminution in value.' In other words, economic loss is those damages that arise as a 'result of the failure of the product to perform to the level expected by the buyer, which is the core concern of traditional contract law.' *Northwest Arkansas Masonry, Inc. v. Summit Specialty Products, Inc.*, 29 Kan. App. 2d 735, 742, 31 P.3d 982 (2001)." *Corvias Military Living, LLC v. Ventamatic, Ltd.*, 54 Kan. App. 2d 169, 173, 397 P.3d 441 (2017).

The panel went on to discuss how the development of the economic loss doctrine was primarily driven by a concern to prevent contract law from "'drown[ing] in a sea of tort.'" 54 Kan. App. 2d at 174 (quoting *East River S.S. Corp. v. Transamerica Delaval*, 476 U.S. 858, 866, 106 S. Ct. 2295, 90 L. Ed. 2d 865 [1986]). In other words, at common law, economic loss damages are *contract* damages, not *tort* damages. This is because "a manufacturer in a commercial relationship has no duty under either a negligence or strict

products-liability theory to prevent a product from injuring itself." *East River S.S. Corp.,* 476 U.S. at 871. Because as a matter of law there is no duty to prevent a product from injuring itself, there can be no recovery for such damages under any tort theory, including a common-law product liability claim.

Our Court of Appeals had previously explained that the economic loss doctrine is a "rule that is straightforward and predictable and that establishes a logical demarcation between cases properly pursued as tort actions and those which are warranty claims." *Koss Construction v. Caterpillar, Inc.*, 25 Kan. App. 2d 200, 205, 960 P.2d 255 (1998). The panel below then noted that this court has refused to apply the economic loss doctrine in the context of a tort claim when a duty actually exists as a matter of law. *Corvias Military Living, LLC*, 54 Kan. App. 2d at 176 (discussing *Rinehart v. Morton Buildings, Inc.*, 297 Kan. 926, 305 P.3d 622 [2013], and *David v. Hett*, 293 Kan. 679, 270 P.3d 1102 [2011]).

With this as background, the Court of Appeals panel then turned to the question of the scope of the "product" itself. If Ventamatic and Jakel did not have a legal duty to prevent the bathroom fan from damaging itself, did Ventamatic and Jakel have a legal duty to prevent the fan from damaging the house? The answer to this question turns on the application of the integrated system rule and depends, essentially, on whether the "product" is the house as a whole, or only the discrete part of the house manufactured and sold by the defendants.

On this score, the Court of Appeals disagreed with the district court's conclusion that the fans were an integrated part of the homes—that the homes themselves were the products and that Ventamatic and Jakel had no legal duty to prevent damage to the "product." *Corvias Military Living, LLC*, 54 Kan. App. 2d at 179. In reaching its conclusion, the panel relied on the Wisconsin Court of Appeals decision in *State Farm Fire and Cas. Co. v. Hague Quality Water,* 345 Wis. 2d 741, 826 N.W.2d 412 (2012).

There, the Wisconsin court held that "a defective product must be integral to the function of the damaged property before the defective product and the damaged property may be considered part of the same integrated system." 345 Wis. 2d at 748.

The panel highlighted the use of the word "integral" noting that it "means '[e]ssential or necessary for completeness; constituent.'" *Corvias Military Living, LLC*, 54 Kan. App. 2d at 178 (quoting The American Heritage Dictionary 911 [5th ed. 2016]). The panel found that here, the "fans at issue . . . [were] not integral, necessary, essential, or indispensable to the functioning of the damaged housing units." 54 Kan. App. 2d at 179. As a result, the panel reversed the grant of summary judgment in favor of Ventamatic and Jakel with respect to the alleged property damage to the homes.

The Court of Appeals, however, did not expressly address whether the claim for removal and replacement damages was still a viable part of Corvias' product liability cause of action. And neither did the panel consider Corvias' implied warranty claim separately:

> "In light of our conclusion, it is unnecessary for us to address the issue of whether the bathroom exhaust fans were inherently dangerous. As the district court correctly noted, the Kansas Product Liability Act 'consolidates all product liability actions, regardless of theory, into one basis for liability.' Accordingly, we will not consider the implied warranty claim separately. [Citations omitted.]" 54 Kan. App. 2d at 179.

Thus, it is clear to us that the panel's decision left some uncertainty about the ongoing viability of Corvias' claim for recovery of the removal and replacement costs under *either* a product liability claim *or* some other claim.

Ventamatic and Jakel filed a joint petition for review asking us to consider: (1) whether Kansas' "economic loss doctrine" and "integrated systems" rule bar Corvias

from recovering for the damage to housing units; and—reflecting the above-noted ambiguity in the panel's decision—(2) whether Kansas' economic loss doctrine bars Corvias from recovering the costs to remove and replace the allegedly defective in-ceiling bathroom fans.

ANALYSIS

The summary judgment standard is well known and often stated:

""Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and when we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied."' [Citation omitted.]" *Patterson v. Cowley County, Kansas*, 307 Kan. 616, 621, 413 P.3d 432 (2018).

At this stage of the litigation there are no disputed facts, only disputed questions of law. We exercise plenary judgment over such questions and likewise, to the extent we must interpret statutory language to resolve this case, our review is unlimited. *Nauheim v. City of Topeka*, 309 Kan. 145, 149, 432 P.3d 647 (2019).

Corvias seeks to recover money from Ventamatic and Jakel to compensate it for two different categories of expenses: (1) fire damage to the homes; and (2) the cost of removing and replacing the fans that did not catch on fire. In asserting these claims,

8

Ventamatic pursued legal theories governed by the KPLA and other theories not governed by the KPLA. This accounts for much of the confusion in this case.

In order to decide which categories of damages Ventamatic might be able to recover as a matter of law—and under which cause of action—requires us to first interpret the KPLA, K.S.A. 60-3301 et seq. Our interpretation is guided by the fundamental rule that the intent of the Legislature governs if it can be ascertained. *Ullery v. Othick*, 304 Kan. 405, 409, 372 P.3d 1135 (2016). We attempt to ascertain this intent by giving common words their ordinary meanings. 304 Kan. at 409. When a statute is plain and unambiguous, an appellate court will not speculate about the legislative intent behind that clear language. 304 Kan. at 409. Only when a court discerns an ambiguity in the language chosen by the Legislature will the court resort to statutory construction to ascertain legislative intent. 304 Kan. at 409.

In Kansas, the KPLA governs all product liability causes of action. The KPLA expressly defines both the scope of a product liability cause of action and the remedies available to plaintiffs pursuing such a cause of action:

> "(c) 'Product liability claim' includes any claim or action brought for harm caused by the manufacture, production, making, construction, fabrication, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging, storage or labeling of the relevant product. It includes, but is not limited to, any action based on, strict liability in tort, negligence, breach of express or implied warranty, breach of, or failure to, discharge a duty to warn or instruct, whether negligent or innocent, misrepresentation, concealment or nondisclosure, whether negligent or innocent, or under any other substantive legal theory.

> "(d) 'Harm' includes:  (1) Damage to property; (2) personal physical injuries, illness and death; (3) mental anguish or emotional harm attendant to such personal physical injuries, illness or death. The term 'harm' does not include direct or consequential economic loss." K.S.A. 60-3302(c)-(d).

9

Ventamatic and Jakel argue first that all of Corvias' claims are subsumed into one "product liability claim" according to the statute, and that because the economic loss doctrine applies to product liability claims, it bars all of Corvias' claims. Ventamatic and Jakel argue these provisions codify the common-law economic loss doctrine, including the integrated systems rule.

While we agree that K.S.A. 60-3302(d) codifies a version of the economic loss doctrine, it is a modified version. Because the KPLA crowds both tort-based theories of recovery under the same umbrella as warranty-based theories of recovery, the major impetus behind the common-law development of the economic loss doctrine—to push claims for economic losses out of the tort arena and back into the contract arena—has been at least partially rejected by the Legislature. It makes sense, then, that the KPLA would include "damage to property" in its definition of damages that are recoverable. K.S.A. 60-3302(d)(1). Giving these words their ordinary meaning, it is clear the Legislature intended to allow recovery for damage to any property, even damage to the product itself.

This simplified statutory approach finds further support in the Model Uniform Products Liability Act (MUPLA), upon which the KPLA was modeled. See *Gaumer v. Rossville Truck & Tractor Co.,* 292 Kan. 749, 753, 257 P.3d 292 (2011). The MUPLA explains that "the term [harm] also includes damage to the product itself." 44 Fed. Reg. 62,719 (October 31, 1979). In sum, the economic loss doctrine in Kansas does not preclude the recovery of property damage—even property damage to the product itself—within a product liability cause of action. To the extent this is a modification of the common-law economic loss doctrine within the scope of a product liability cause of action, it is a modification that is within the power of the Legislature to make. See *Hilburn v. Enterpipe Ltd.*, 309 Kan. 1127, 1136, 442 P.3d 509 (2019) ("it is within the

10

power of the Legislature to modify the common law"). In this statutory framework, whether the property is part of an integrated system is irrelevant.

But within the scope of a product liability cause of action, the KPLA does codify a version of the economic loss doctrine by simply excluding from the definition of harm "any direct or consequential economic loss." K.S.A. 60-3302(d). Resolving this case does not require us to engage in a drawn-out discussion of this statutory phrase because Corvias has conceded that its removal and replacement costs are economic losses under K.S.A. 60-3302(d). Therefore, they are statutorily excluded from the category of "harm" that can be recovered in a product liability action. The question then arises, did Corvias assert any claim outside the scope of the KPLA?

Indeed, there is a logical circularity to the KPLA. First, "direct or consequential economic loss" is excluded from the definition of "harm" in the statute. Second, the statute expressly defines the scope of a product liability cause of action in terms of the harm caused—"'Product liability claim' includes any claim or action brought for harm caused by . . . ." K.S.A. 60-3302(c). By definition, then, any cause of action that lawfully seeks to recover direct or consequential economic loss is not a product liability claim and is not governed by the KPLA.

Thus, the Legislature has not cast the product liability net so wide as to subsume and extinguish other legally viable causes of action for the recovery of economic losses. A full accounting of legally viable causes of action for the recovery of economic losses is beyond the scope of this case. Though certainly, a pure contract claim may be a viable path to recovering economic losses. And though Corvias did not assert any pure contract claims against these defendants, it did assert a claim for unjust enrichment.

Unjust enrichment is a modern version of the older doctrine of quasi-contract. *Haz-Mat Response, Inc. v. Certified Waste Services Ltd.*, 259 Kan. 166, Syl. ¶ 5, 910 P.2d

11

839 (1996). The basis of an unjust enrichment claim "'lies in a promise implied in law that one will restore to the person entitled thereto that which in equity and good conscience belongs to that person.'" *University of Kansas Hosp. Auth. v. Board of Wabaunsee County Comm'rs*, 299 Kan. 942, 960, 327 P.3d 430 (2014) (quoting *Haz-Mat Response, Inc.*, 259 Kan. 166, Syl. ¶ 5). Like a contract claim, a quasi-contract arises when one party has conferred a benefit to the other without just compensation. Rather than granting the aggrieved party relief under a contractual obligation, unjust enrichment awards compensation out of justice and equity. 299 Kan. at 960.

We are unable to discern from the record before us whether some or all of the amounts Corvias claims as removal and replacement damages are legally recoverable in an unjust enrichment cause of action. If Corvias can prove the elements of its unjust enrichment claim with respect to these claimed damages, neither the economic loss doctrine nor the KPLA would bar that recovery.

Therefore, we affirm the Court of Appeals decision to reverse the lower court's grant of summary judgment to the defendants with respect to any property damage, albeit for a different reason. See *Trear v. Chamberlain*, 308 Kan. 932, 933, 425 P.3d 297 (2018) (affirming the Court of Appeals as right for the wrong reason). We reverse the implicit holding of the Court of Appeals that Corvias' claim for removal and replacement damages is subsumed into its product liability claim and barred by the economic loss doctrine. And we remand to the district court for further proceedings consistent with this judgment.

Affirmed in part, reversed in part, and remanded with directions.

LUCKERT, BEIER, and JOHNSON, JJ., not participating.

12

J. CHARLES DROEGE, District Judge, assigned.[1]

JEFFRY J. LARSON, District Judge, assigned.[2]

---

[1]**REPORTER'S NOTE:** District Judge Droege was appointed to hear case No. 116,307 vice Justice Luckert under the authority vested in the Supreme Court by art. 3, § 6(f) of the Kansas Constitution.

[2]**REPORTER'S NOTE:** District Judge Larson was appointed to hear case No. 116,307 vice Justice Beier under the authority vested in the Supreme Court by art. 3, § 6(f) of the Kansas Constitution.