IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 113,705

STATE OF KANSAS,
*Appellee*,

v.

BROOKE DANIELLE DINKEL,
*Appellant*.

SYLLABUS BY THE COURT

1.

As defined in K.S.A. 2012 Supp. 21-5503(a)(3), rape of child under the age of 14 requires a voluntary act on the part of the defendant.

2.

A defendant's claim that he or she was forcibly raped is relevant to the crime rape of a child under the age of 14 since rape of the defendant negates the voluntary act requirement.

Review of the judgment of the Court of Appeals in an unpublished opinion filed March 23, 2018. Appeal from Saline District Court; PATRICK H. THOMPSON, judge. Opinion filed June 12, 2020. Judgment of the Court of Appeals affirming the district court is reversed, and the case is remanded to the district court with directions. Appellate jurisdiction is retained.

*Richard Ney*, of Ney, Adams & Miller, of Wichita, argued the cause, and *David L. Miller*, of the same firm, was with him on the briefs for appellant.

1

*Amy E. Norton*, assistant county attorney, argued the cause, and *Derek Schmidt,* attorney general, was with her on the brief for appellee.

The opinion of the court was delivered by

ROSEN, J.:  A jury convicted Brooke Dinkel of two counts of rape of a child under the age of 14. Dinkel appealed, arguing that the exclusion of various pieces of evidence violated evidentiary rules and her constitutional right to present a defense. She also argued her trial lawyer was ineffective on several grounds. Most of Dinkel's claims related to her defense that the alleged victim—K.H.—raped her and that she continued the sexual contact because K.H. was blackmailing her and she had a mental disease or defect. The Court of Appeals affirmed the convictions based largely on its conclusion that rape of a child has no mental culpability requirement, so the defendant's intent is irrelevant. We hold the Court of Appeals erred in concluding whether K.H. forced the sexual encounter was irrelevant. We retain jurisdiction and remand the case to the district court for a *Van Cleave* hearing to determine whether defense trial counsel was ineffective for failing to argue the State never established the voluntary act requirement.

FACTUAL AND PROCEDURAL HISTORY

Dinkel was a middle school counselor. In 2014, the State charged her with 10 counts of rape of a child under 14 and 10 counts of criminal sodomy. The State alleged that Dinkel had been having a sexual relationship with K.H., a 13-year-old boy who was a student at the school where Dinkel worked. Dinkel would later offer three primary defenses at trial: K.H. physically forced the first sexual encounter; and any sexual encounters thereafter were a result of K.H. blackmailing Dinkel or Dinkel's mental disease or defect.

2

Prior to trial, Dinkel filed a "notice of mental disease or defect" in which she informed the court of her intent to rely on a mental disease or defect defense at trial. The notice indicated that Dinkel had been "suffering from a variety of psychological problems, which when compounded by the physical violence perpetrated by the alleged victim K.H., created a situation where [Dinkel] lacked the requisite mental state to commit the crimes charged." The notice explained that Dinkel intended to support this defense with testimony from Dr. Marilyn Hutchinson, Ph.D., who had evaluated Dinkel.

The State responded in opposition, arguing that the court should not allow the defense at trial because Dr. Hutchinson never concluded that a mental disease or defect prevented Dinkel from forming the required mental state of the crime. The State further argued that Hutchinson claimed in her report that Dinkel was "sexually assaulted" by K.H. and that this was an "improper opinion testi[mony] about the defendant's guilt or innocence."

The district court ruled that it would not allow any testimony from Hutchinson. The court observed that Hutchinson's report concluded that "'[a]fter a lifelong history of multiple sexual and physical assaults, Miss Dinkel was sexually assaulted by formidably-sized teenager who was her counselee.'" The court then noted that the report went on to "talk about [Hutchinson's] opinion as to what happened, but does not tie that to any mental state that would have provided or would have established that Ms. Dinkel was unable to form the requisite intent to commit the crime."

At trial, the State put on evidence indicating that Dinkel took special interest in K.H. at the beginning of the 2012 school year. According to the State's evidence, Dinkel became inappropriately involved with K.H. She brought him food in detention, met with

3

him in her locked office, hired him for projects around her house, and gave him a credit card. K.H. testified that the relationship turned sexual in late 2012 and that the sexual activity continued into the next year. K.H. maintained that the sex was mutually consensual.

Dinkel testified in her own defense. She stated that she been looking out for K.H. and eventually hired him to do some work around her house and provided him with a credit card for lunch money. She acknowledged that the relationship took a turn in December 2012 when K.H. forcibly raped her. Dinkel asserted that K.H., who was 6'2" and weighed at least 170 pounds, pushed her down on the bed and held her there while he penetrated her vagina with his penis. Dinkel testified that she "just laid there" during the assault. Dinkel did not explicitly admit that there was any other sexual contact beyond the initial encounter, but she did insinuate that she would succumb to any of K.H.'s sexual demands after the rape.

During Dinkel's testimony, the court admitted evidence of a Facebook message allegedly sent from K.H. to Dinkel suggesting that K.H. had forced the first sexual encounter and blackmailed Dinkel into continuing the sexual relationship.

On cross-examination, the State tried to get Dinkel to admit that she had falsified the Facebook message, but Dinkel denied doing so. The State put on Officer Carlos Londono as a rebuttal witness over Dinkel's objection. Londono testified about how one might create a fake Facebook account and about some peculiarities surrounding the Facebook message that K.H. allegedly sent to Dinkel.

During trial, Dinkel moved for reconsideration of the district court's earlier ruling regarding Hutchinson's testimony. The court ruled that it would not allow Hutchinson to

4

testify that Dinkel was credible in saying she was raped by K.H. But the court allowed Hutchinson to give limited testimony about whether some of Dinkel's actions that followed the first sexual encounter were normal behaviors for someone who had suffered a forced sexual trauma.

The jury convicted Dinkel of two counts of rape of a child under 14 and acquitted Dinkel of the remaining 18 charges. The district court sentenced Dinkel to 165 months' imprisonment with lifetime postrelease supervision for the first rape conviction and a concurrent 165 months' imprisonment with lifetime postrelease supervision on the second rape conviction.

Dinkel appealed her convictions. She argued that the district court erred when it kept out Hutchinson's full testimony, when it did not offer an instruction on mental disease or defect, and when it permitted Londono to testify. Dinkel also argued that her counsel had been ineffective in a variety of ways. The Court of Appeals remanded the case for a *Van Cleave* hearing on the ineffective assistance of counsel claims.

Both sides presented evidence at the *Van Cleave* hearing. The district court considered eight claims of ineffective assistance of defense trial counsel and concluded that counsel had been deficient in only one regard—for failing to pursue the admissibility of text messages suggesting that K.H. was sexually active and aggressive with other women. However, the court concluded that Dinkel failed to show that this prejudiced her case and, consequently, had failed to establish ineffective assistance of counsel.

Dinkel timely appealed from the *Van Cleave* hearing, contesting all the district court's conclusions. The Court of Appeals rejected all of Dinkel's claims, including those in her original appellate briefing and her challenges to the district court rulings at the *Van*

5

*Cleave* hearing. *State v. Dinkel*, No. 113,705, 2018 WL 1439992 (Kan. App. 2018) (unpublished opinion). The panel's decisions were based largely on its sua sponte consideration of the required mental state of rape of a child and its conclusion that the defendant's intent is irrelevant to the commission of this crime.

Dinkel petitioned for review. She argued that the panel erred when it concluded a defendant's intent is irrelevant to the crime of rape of a child and challenged all the panel's holdings. We granted review.

ANALYSIS

While the Court of Appeals considered each of Dinkel's claimed errors individually, early in its decision the panel concluded that rape of a child requires no culpable mental state. The panel then held that Dinkel's defense theories based on forcible rape, blackmail, and her corresponding mental condition were not legally relevant because those theories would only negate mental culpability. 2018 WL 1439992, at *6-8. At this stage of our review we focus on only whether the panel erred when holding that Dinkel's forcible rape theory was irrelevant to her case.

To examine this holding, we must interpret various statutes. We perform an unlimited review when interpreting statutes. *State v. Russ*, 309 Kan. 1240, 1242, 443 P.3d 1060 (2019).

The legislative intent behind a statute governs our interpretation of that statute. *Corvias Military Living, LLC v. Ventamatic*, *Ltd.*, 310 Kan. 824, 830, 450 P.3d 797 (2019). To identify this intent, we give "common words their ordinary meanings." 310

6

Kan. at 830. If language in a statute is plain and unambiguous, we do not "speculate about the legislative intent behind that clear language." 310 Kan. at 830.

There are five ways to commit rape in Kansas.

"(a) Rape is:

(1) Knowingly engaging in sexual intercourse with a victim who does not consent to the sexual intercourse under any of the following circumstances:

(A) When the victim is overcome by force or fear; or

(B) when the victim is unconscious or physically powerless;

(2) Knowingly engaging in sexual intercourse with a victim when the victim is incapable of giving consent because of mental deficiency or disease, or when the victim is incapable of giving consent because of the effect of any alcoholic liquor, narcotic, drug or other substance, which condition was known by the offender or was reasonably apparent to the offender;

(3) sexual intercourse with a child who is under 14 years of age;

(4) sexual intercourse with a victim when the victim's consent was obtained through a knowing misrepresentation made by the offender that the sexual intercourse was a medically or therapeutically necessary procedure; or

(5) sexual intercourse with a victim when the victim's consent was obtained through a knowing misrepresentation made by the offender that the sexual intercourse was a legally required procedure within the scope of the offender's authority." K.S.A. 2012 Supp. 21-5503.

K.S.A. 2012 Supp. 21-5501(a) defines "'sexual intercourse'" as "any penetration of the female sex organ by a finger, the male sex organ or any object."

7

The jury convicted Dinkel under K.S.A. 2012 Supp. 21-5503(a)(3), meaning it found Dinkel guilty of "penetration of the female sex organ by a finger, the male sex organ or any object" "with a child who is under 14 years of age." K.S.A. 2012 Supp. 21-5501(a); K.S.A. 2012 Supp. 21-5503(a)(3).

K.S.A. 2012 Supp. 21-5202 governed the mental culpability requirements of criminal action at the time of the charged unlawful conduct. Its opening provision states that "[e]xcept as otherwise provided, a culpable mental state is an essential element of every crime . . . . A culpable mental state may be established by proof that the conduct of the accused person was committed 'intentionally,' 'knowingly,' or 'recklessly.'" K.S.A. 2012 Supp. 21-5202(a).

This statute also describes the result if the statutory language does not provide a culpable mental state: "if the definition of a crime does not prescribe a culpable mental state, a culpable mental state is nevertheless required unless the definition plainly dispenses with any mental element." K.S.A. 2012 Supp. 21-5202(d). Another statute, K.S.A. 2012 Supp. 21-5203(b), explicitly authorizes dispensing with a culpable mental state "if the crime is . . . a felony and the statute defining the crime clearly indicates a legislative purpose to impose absolute liability for the conduct described."

There is no mental culpability language in K.S.A. 2012 Supp. 21-5503(a)(3). There is, however, mental culpability language in every other subsection describing the four alternative ways of committing rape. The Court of Appeals, citing K.S.A. 2012 Supp. 21-5202(d) and K.S.A. 2012 Supp. 21-5203(b), held that this "clearly indicate[d] a legislative purpose to impose absolute liability for the conduct described." 2018 WL 1439992, at *6. Consequently, the panel held that there is no mental culpability requirement for the crime of rape of a child.

8

After coming to this conclusion, the panel held that all of Dinkel's defenses were irrelevant. Regarding her forcible rape argument, the panel explained "because the crime charged requires no intent, even a perfectly presented . . . rape theory showing lack of intent would not have been an adequate legal defense." 2018 WL 1439992, at *11.

We do not agree with the panel's conclusion that whether K.H. forcibly raped Dinkel was irrelevant. As Dinkel argues, even if there is no mental culpability requirement for the charged crime—a conclusion we do not address today—whether she was forcibly raped affected whether she committed the actus reus of the crime. Dinkel points to K.S.A. 2012 Supp. 21-5201, which requires voluntary conduct for criminal action.

K.S.A. 2012 Supp. 21-5201 is titled "Requirements of voluntary act or omission" and provides:

> "(a) A person commits a crime only if such person voluntarily engages in conduct, including an act, an omission or possession.
> "(b) A person who omits to perform an act does not commit a crime unless a law provides that the omission is an offense or otherwise provides that such person has a duty to perform the act."

No law criminalizes an omission with regard to the rape of a child. Consequently, Dinkel is guilty of rape of a child only if she "voluntarily engage[d] in conduct." K.S.A. 2012 Supp. 21-5201.

Dinkel asserts that "[t]he victim of a rape does not voluntarily engage in sexual intercourse with the perpetrator." To decide whether Dinkel is correct, we must determine

9

what it means for conduct to be "voluntary." Black's Law Dictionary defines "voluntary" as "[d]one by design or intention." Black's Law Dictionary 1886 (11th ed. 2019). It defines "conduct" as "[p]ersonal behavior, whether by action or inaction, verbal or nonverbal; the manner in which a person behaves; collectively, a person's deeds." Black's Law Dictionary 369 (11th ed. 2019). According to these definitions, "voluntary conduct" is "personal behavior" "done by design or intention."

Black's Law Dictionary also provides a definition of a "voluntary act," which is a term included in the title of the statute. A "voluntary act" is:

"A willed bodily movement; esp., the type of act that is necessary for the imposition of criminal liability when such liability is not predicated on an omission. Under both the common law and the Model Penal Code, a person cannot be held liable for a crime without engaging in a prohibited voluntary act or omission. A bodily movement that is a product of the effort or determination of the actor, either conscious or habitual, is a voluntary act. Reflexes, convulsions, and movements made while unconscious, asleep, or under the influence of hypnosis are not voluntary acts." Black's Law Dictionary 32 (11th ed. 2019).

Together, these definitions indicate that voluntary conduct or a voluntary act is "personal behavior" "done by design or intention" or "[a] willed bodily movement." These unambiguous definitions support Dinkel's argument that her voluntariness in engaging in certain bodily movements is relevant to her charged crime. This leads us to the conclusion that any evidence K.H. physically forced the sexual intercourse and Dinkel did not intend any of the bodily movements that resulted in the sexual intercourse with K.H. is legally relevant to the voluntary act requirement of rape of a child under K.S.A. 2012 Supp. 21-5503(a)(3). The panel erred when it held otherwise.

We take a moment to acknowledge our potentially confusing use of the word "intent" in the context of the actus reus. We have described the voluntary act requirement as "personal behavior" "done by design or intention" and clearly held that Dinkel's intention with regard to her bodily movements was relevant to the act requirement. But the Legislature has also used the word "intent" to describe the highest level of mens rea, or mental culpability. See K.S.A. 2012 Supp. 21-5202(b) (explaining that "intentionally" is the highest culpable mental state). This statute provides that "[a] person acts 'intentionally,' or 'with intent,' with respect to the nature of such person's conduct or to a result of such person's conduct when it is such person's conscious objective or desire to engage in the conduct or cause the result." K.S.A. 2012 Supp. 21-5202(h).

Although the language overlaps, we see a difference between the voluntary act requirement of the actus reus and intentional mental culpability. A voluntary act is an intentional bodily movement, *i.e.*, the intention to lift an arm or move a leg in a certain direction—whatever bodily movement is needed to complete the act requirement. In contrast, intentional mental culpability is the conscious desire to engage in conduct of a certain nature or produce a certain result—*i.e.*, to desire injurious movement or a slap or a kick. K.S.A. 2012 Supp. 21-520(h) (providing a definition of intent and implying that one must act intentionally "with respect to the nature of such person's conduct" or have a "conscious objective or desire to engage in the conduct or cause the result"). See also Denno, *Crime and Consciousness: Science and Involuntary Acts*, 87 Minn. L. Rev. 269, 289 (2002) ("voluntary act requirement must be met before it can be determined if the defendant satisfied the MPC's narrower mens rea requirements [purpose, knowledge, recklessness, or negligence]"); *State v. Siracusa*, 160 A.3d 531, 534 n.6 (Me. 2017) ("The legal concepts of voluntariness and mens rea are distinct."). Consequently, even if Dinkel's rape defense was not relevant to a mental culpability requirement, it was relevant to the actus reus requirement.

11

We pause to address a separate line of reasoning the panel seemed to offer in support of its conclusion that forcible rape is irrelevant to whether one committed rape of a child. After deciding there is no mental culpability requirement for rape of a child, the panel noted that "Dinkel contends that if the statute contains no culpable mental state, an unwilling adult who is forcibly raped by a child could be found guilty of this crime" and concluded "this argument is hypothetical and does not apply to the facts of this case." *Dinkel*, 2018 WL 1439992, at *8. The panel wrote that it could not "conceive of a situation in which the lack of an intent element in this statute could lead to the prosecution of a victim rather than of the perpetrator of the crime." 2018 WL 1439992, at *8.

The panel's comments suggest that its incredulity regarding Dinkel's claim she was forcibly raped influenced its decision that her forcible rape theory is not legally relevant. But appellate courts do not make credibility determinations. And, whether a defense theory is legally relevant does not rest on whether an appellate court believes it. Dinkel contends that the exact thing that the panel cannot "conceive of" has happened. If her theory is legally relevant, she should be able to present it to the jury—whether an appellate court can conceive of it happening or not. The panel's disbelief should not have factored into its consideration of whether her theory was legally relevant.

With our conclusion, we face new questions: how did the voluntary act requirement go unaddressed until it reached this stage of review, and, more practically, was Dinkel's trial counsel ineffective for failing to argue that the State never established the actus reus of the crime? Before we consider any other aspects of this case, we remand it to the district court for the sole purpose of answering our question. We will retain jurisdiction and take this case up again after the district court has had a chance to hold a

12

*Van Cleave* hearing and determine whether defense trial counsel was ineffective for failing to argue that the State did not establish the voluntary act requirement.

Judgment of the Court of Appeals affirming the district court is reversed, and the case is remanded to the district court with directions.  Appellate jurisdiction is retained.

HENRY W. GREEN, JR., J., assigned.[1]
STEVE LEBEN, J., assigned.[2]

---

[1]**REPORTER'S NOTE:**  Judge Green, of the Kansas Court of Appeals, was appointed to hear case No. 113,705 under the authority vested in the Supreme Court by K.S.A. 2019 Supp. 20-3002(c) to fill the vacancy on the court by the retirement of Justice Lee A. Johnson.

[2]**REPORTER'S NOTE:**  Judge Leben, of the Kansas Court of Appeals, was appointed to hear case No. 113,705 under the authority vested in the Supreme Court by K.S.A. 2019 Supp. 20-3002(c) to fill the vacancy on the court by the retirement of Chief Justice Lawton R. Nuss.