# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE No.: | 2017AP2361 |

| | |
|---|---|
| COMPLETE TITLE: | Chris Hinrichs and Autovation Limited, Plaintiffs-Appellants-Petitioners, v. The DOW Chemical Company d/b/a Dow Automotive, Defendant-Respondent-Petitioner. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 386 Wis. 2d 351,927 N.W.2d 156
(2019 – unpublished)

| | |
|---|---|
| OPINION FILED: | January 9, 2020 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | October 3, 2019 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Waukesha |
| JUDGE: | Kathryn W. Foster |

JUSTICES:

ANN WALSH BRADLEY, J., delivered the majority opinion of the Court, in which ROGGENSACK, C.J., ZIEGLER and DALLET, JJ., joined and REBECCA GRASSL BRADLEY, J., joined with respect to Parts I, II, and III. REBECCA GRASSL BRADLEY, J., filed an opinion concurring in part and dissenting in part.

NOT PARTICIPATING:

KELLY and HAGEDORN, JJ.

ATTORNEYS:

For the defendant-respondent-petitioner, there were briefs filed by *Patrick M. Harvey, Gabrielle Baumann Adams,* and *Husch Blackwell LLP*, Milwaukee. There was an oral argument by *Patrick M. Harvey*.

For the plaintiff-appellant-petitioner, there were briefs filed by *Terry J. Booth* and *Rogahn Jones LLC*, Waukesha. There was an oral argument by *Terry J. Booth*.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2017AP2361
 (L.C. No. 2016CV1544)

STATE OF WISCONSIN : IN SUPREME COURT

**Chris Hinrichs and Autovation Limited,**

     **Plaintiffs-Appellants-Petitioners,**

  v.

**The DOW Chemical Company d/b/a Dow Automotive,**

     **Defendant-Respondent-Petitioner.**

**FILED**

**JAN 9, 2020**

Sheila T. Reiff
Clerk of Supreme Court

ANN WALSH BRADLEY, J., delivered the majority opinion of the Court, in which ROGGENSACK, C.J., ZIEGLER and DALLET, JJ., joined and REBECCA GRASSL BRADLEY, J., joined with respect to Parts I, II, and III. REBECCA GRASSL BRADLEY, J., filed an opinion concurring in part and dissenting in part.

KELLY and HAGEDORN, JJ., did not participate.

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 ANN WALSH BRADLEY, J. In this case we are asked to address a multitude of issues that arise out of common law and statutory misrepresentation claims. Along the way, we discuss the economic loss doctrine together with its exceptions and examine statutes and their applications.

¶2   Both parties to this case seek review of aspects of an unpublished, per curiam decision of the court of appeals.[1]   The court of appeals affirmed the circuit court's dismissal of Chris Hinrichs and Autovation Limited's (collectively, Hinrichs) common law misrepresentation claims against the DOW Chemical Company (Dow) and reversed the circuit court's dismissal of Hinrichs' statutory claim made pursuant to Wis. Stat. § 100.18 (2015-16).[2]

¶3   Hinrichs appeals the dismissal of his common law misrepresentation claims.   Specifically, he contends that the court of appeals erred by applying the economic loss doctrine to bar such claims.   He argues that the "fraud in the inducement" and "other property" exceptions to the economic loss doctrine apply and that as a result his common law claims should go forward.

¶4   Dow cross-petitioned for review of the court of appeals' determination that Hinrichs' Wis. Stat. § 100.18 claim survives its motion to dismiss.   It asserts first that Hinrichs' statutory claim is barred by the economic loss doctrine.   Next, it contends that Hinrichs is not "the public" within the meaning of § 100.18 and that this court should overrule its previous decision in State v. Automatic Merchs. of Am., Inc., 64 Wis. 2d 659, 221 N.W.2d 683 (1974).   Finally, Dow contends that the heightened pleading standard set forth by Wis. Stat. § 802.03(2) for claims of fraud

---

[1] Hinrichs v. The DOW Chemical Co., No. 2017AP2361, unpublished slip op. (Wis. Ct. App. Feb. 6, 2019) (per curiam) (affirming in part and reversing in part an order of the circuit court for Waukesha County, Kathryn W. Foster, Judge).

[2] All subsequent references to the Wisconsin statutes are to the 2015-16 version unless otherwise indicated.

applies to claims made under § 100.18, and that Hinrichs' complaint fails to meet those heightened standards.

¶5   In examining Hinrichs' common law claims, we conclude that the "fraud in the inducement" exception to the economic loss doctrine does not apply to allow Hinrichs' common law claims to go forward because the alleged misrepresentation is related to the quality and characteristics of the product in question and is thus not extraneous to the contract.   We further conclude that the "other property" exception to the economic loss doctrine does not apply to allow Hinrichs' common law claims to go forward because the JeeTops and adhesive are components of an integrated system.

¶6   With regard to Hinrichs' statutory claim, we conclude first that the economic loss doctrine does not serve as a bar to claims made under Wis. Stat. § 100.18.   We conclude second that one person can be "the public" for purposes of Wis. Stat. § 100.18(1) and decline Dow's invitation to overrule Automatic Merchandisers.   The court of appeals correctly determined that dismissal for failure to meet "the public" component of a § 100.18 claim in this case was in error.   Finally, we conclude that the heightened pleading standard set forth by Wis. Stat. § 802.03(2) for claims of fraud does not apply to claims made under Wis. Stat. § 100.18 and that Hinrichs' complaint states a claim under the general pleading standard.

¶7   Accordingly, we affirm the decision of the court of appeals.

I

¶8    The facts set forth below are taken from Hinrichs' complaint.    Because we are reviewing the circuit court's determination of a motion to dismiss for failure to state a claim, we must assume that these facts are true.[3]

¶9    Hinrichs developed a product called JeeTops, which he manufactures and installs through his company, Autovation Limited. He obtained a patent for the JeeTops in 2010.

¶10   JeeTops are acrylic skylights installed aftermarket in the roofs of Jeep Wrangler vehicles equipped with a certain type of hardtop.  The complaint describes the JeeTops as giving "front-seat passengers unparalleled views of the outdoors" and rear-seat passengers "unprecedented panoramic views."    After installation, "[t]he cumulative effect is to give the Wrangler's occupants the sensation of directly experiencing the environment through which they are driving."

¶11   Installation of JeeTops is accomplished using an adhesive manufactured by Dow.  The adhesive performs a dual role, attaching the JeeTops to the existing Jeep and maintaining a watertight seal.

¶12   In 2013, Mark Formentini, an agent for Dow, informed Hinrichs that Dow had a new primer available for use with the adhesive employed in installing JeeTops panels.    Formentini

---

[3] See Yacht Club at Sister Bay Condominium Ass'n, Inc. v. Village of Sister Bay, 2019 WI 4, ¶4, 385 Wis. 2d 158, 922 N.W.2d 95.

further informed Hinrichs that the primer would be tested with the acrylic used in JeeTops.

¶13 Shortly thereafter, Hinrichs relayed to Dow that customers were experiencing cracks in their JeeTops panels. Dow responded that the acrylic used in the JeeTops had been sent to its labs for testing.

¶14 After completing testing, Dow sent a report to Hinrichs claiming that the adhesive was properly functioning. The report further indicated that Dow found "[n]o evidence of any crazing or surface cracking . . . ."

¶15 Hinrichs continued purchasing and using Dow adhesives to install JeeTops, but customers continued to observe crazing and fracturing of the acrylic. By October of 2014, one-third of all JeeTops panel installations using the Dow adhesive system had failed.

¶16 Investigation eventually revealed that the Dow adhesive was attacking the integrity of the acrylic, which caused the panels to leak, and subsequently to craze and fracture. By this time JeeTops had received extensive negative publicity, high profile customers had stopped purchasing the product, and dealers had dropped JeeTops from their product lines.

¶17 In time Hinrichs was able to identify a suitable replacement adhesive, but by then the product had suffered a rash of negative publicity. As a result, Hinrichs alleges that despite the warm reception JeeTops initially received, he is unable to sell them because of the perception that they are unreliable.

5

¶18 Following these events, Hinrichs brought four causes of action against Dow: negligent misrepresentation, intentional misrepresentation, strict responsibility misrepresentation and violation of Wis. Stat. § 100.18(1).[4] Dow moved to dismiss the complaint for failure to state a claim upon which relief can be granted.[5]

---

[4] Wisconsin Stat. § 100.18(1) provides:

No person, firm, corporation or association, or agent or employee thereof, with intent to sell, distribute, increase the consumption of or in any wise dispose of any real estate, merchandise, securities, employment, service, or anything offered by such person, firm, corporation or association, or agent or employee thereof, directly or indirectly, to the public for sale, hire, use or other distribution, or with intent to induce the public in any manner to enter into any contract or obligation relating to the purchase, sale, hire, use or lease of any real estate, merchandise, securities, employment or service, shall make, publish, disseminate, circulate, or place before the public, or cause, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public, in this state, in a newspaper, magazine or other publication, or in the form of a book, notice, handbill, poster, bill, circular, pamphlet, letter, sign, placard, card, label, or over any radio or television station, or in any other way similar or dissimilar to the foregoing, an advertisement, announcement, statement or representation of any kind to the public relating to such purchase, sale, hire, use or lease of such real estate, merchandise, securities, service or employment or to the terms or conditions thereof, which advertisement, announcement, statement or representation contains any assertion, representation or statement of fact which is untrue, deceptive or misleading.

[5] See Wis. Stat. § 802.06(2)(a)6.

¶19 The circuit court granted Dow's motion to dismiss. As relevant here, the circuit court determined first that the economic loss doctrine barred Hinrichs' common law misrepresentation claims. It characterized Hinrichs' losses as purely economic in nature and rejected Hinrichs' argument that either the "fraud in the inducement" exception or "other property" exception applied.

¶20 Second, the circuit court determined that Hinrichs' Wis. Stat. § 100.18 claim must fail because Hinrichs is not "the public" within the meaning of the statute. Specifically, the circuit court based its conclusion on the "plain inference from the complaint . . . that Dow's agent had already been dealing with Plaintiff, and was merely offering another product to them."

¶21 Hinrichs appealed and the court of appeals affirmed in part and reversed in part. The court of appeals affirmed the circuit court's determination that the economic loss doctrine bars Hinrichs' common law misrepresentation claims. Like the circuit court, the court of appeals concluded that neither of the claimed exceptions to the economic loss doctrine applied. Hinrichs v. The DOW Chemical Co., No. 2017AP2361, unpublished slip op., ¶¶14-16 (Wis. Ct. App. Feb. 6, 2019) (per curiam).

¶22 However, the court of appeals reversed the circuit court's determination with regard to the Wis. Stat. § 100.18 claim. It concluded that "dismissal of the Wis. Stat. § 100.18 claim based upon the failure to meet 'the public' component of the first element was improper. The issue requires further exploration through the discovery process." Id., ¶22. Hinrichs petitioned for review of the court of appeals' conclusion regarding the common

7

law misrepresentation claims, and Dow cross-petitioned for review of the § 100.18(1) issue.

II

¶23 We are asked to review the court of appeals' determination affirming in part and reversing in part the circuit court's grant of Dow's motion to dismiss for failure to state a claim. Whether a motion to dismiss was properly granted is a question of law this court reviews independently of the determinations rendered by the circuit court and court of appeals. Town of Lincoln v. City of Whitehall, 2019 WI 37, ¶21, 386 Wis. 2d 354, 925 N.W.2d 520.

¶24 A motion to dismiss tests the legal sufficiency of the complaint. Meyers v. Bayer AG, Bayer Corp., 2007 WI 99, ¶21, 303 Wis. 2d 295, 735 N.W.2d 448. Under our established methodology for review of a motion to dismiss, we accept all facts pleaded in the complaint as true. Id.

¶25 In our review, we are called upon to review the court of appeals' determination that the economic loss doctrine bars Hinrichs' common law misrepresentation claims. The application of the economic loss doctrine to a set of facts presents a question of law we review independently from the determinations of the circuit court and court of appeals. Insurance Co. of N. Am. v. Cease Elec. Inc., 2004 WI 139, ¶15, 276 Wis. 2d 361, 688 N.W.2d 462.

¶26 Next, we are asked to review the court of appeals' conclusion that Hinrichs' claim under Wis. Stat. § 100.18(1) may proceed. In our review, we must interpret §§ 100.18(1) and Wis.

8

Stat. 802.03(2). Statutory interpretation likewise presents a question of law we review independently without deference to the interpretations of the circuit court or court of appeals. Maple Grove Country Club Inc. v. Maple Grove Estates Sanitary Dist., 2019 WI 43, ¶25, 386 Wis. 2d 425, 926 N.W.2d 184.

III

¶27 We address first whether the economic loss doctrine bars Hinrichs' common law misrepresentation claims. For context, we initially set forth the legal principles underlying the economic loss doctrine. Subsequently, we address the applicability of the "fraud in the inducement" and "other property" exceptions to the economic loss doctrine in this case.

¶28 Second, we address whether the court of appeals properly determined that Hinrichs' Wis. Stat. § 100.18 claim survives Dow's motion to dismiss. In our review, we analyze whether the economic loss doctrine can bar claims made pursuant to § 100.18(1). Next, we examine whether Hinrichs is properly "the public" for purposes of § 100.18(1). We then address whether a claim pursuant to § 100.18(1) is subject to the heightened pleading standard set forth by Wis. Stat. § 802.03(2) for claims of fraud and whether Hinrichs' complaint meets the applicable standard.

A

¶29 The economic loss doctrine is a judicially created doctrine with three primary purposes. Van Lare v. Vogt, Inc., 2004 WI 110, ¶17, 274 Wis. 2d 631, 683 N.W.2d 46 (citing Daanen & Janssen, Inc. v. Cedarapids, Inc., 216 Wis. 2d 395, 403, 573 N.W.2d 842 (1998)). First, the doctrine exists to "maintain the

9

fundamental distinction between tort law and contract law . . . ." Id. Second, it protects "commercial parties' freedom to allocate economic risk by contract . . . ." Id. Third, the doctrine encourages "the party best situated to assess the risk [of] economic loss, the commercial purchaser, to assume, allocate, or insure against that risk." Id. The doctrine has been part of our jurisprudence since it was first adopted by this court in Sunnyslope Grading, Inc. v. Miller, Bradford and Risberg, Inc., 148 Wis. 2d 910, 437 N.W.2d 213 (1989).

¶30 We have described the economic loss doctrine as holding that "a commercial purchaser of a product cannot recover solely economic losses from the manufacturer under negligence or strict liability theories . . . ." Van Lare, 274 Wis. 2d 631, ¶18. "Economic loss" in the context of the doctrine is defined as "the loss in a product's value which occurs because the product is 'inferior in quality and does not work for the general purposes for which it was manufactured and sold.'" Insurance Co. of N. Am., 276 Wis. 2d 361, ¶23 (quoting Wausau Tile, Inc. v. Cty. Concrete Corp., 226 Wis. 2d 235, 246, 593 N.W.2d 445 (1999)). Both direct and consequential economic loss are encompassed within this definition. Daanen & Janssen, Inc., 216 Wis. 2d at 401.

¶31 The upshot of the economic loss doctrine is that it "requires transacting parties in Wisconsin to pursue only their contractual remedies when asserting an economic loss claim, in order to preserve the distinction between contract and tort." Ins. Co. of N. Am., 276 Wis. 2d 361, ¶24 (quoting Digicorp, Inc. v. Ameritech Corp., 2003 WI 54, ¶34, 262 Wis. 2d 32, 662 N.W.2d 652).

10

It "precludes parties under certain circumstances from eschewing the more limited contract remedies and seeking tort remedies." Id.

B

¶32 We have recognized several exceptions to the economic loss doctrine, two of which are at issue here. See John J. Laubmeier, Demystifying Wisconsin's Economic Loss Doctrine, 2005 Wis. L. Rev. 225, 228 (2005). First, we address the "fraud in the inducement" exception. Subsequently, we turn to the "other property" exception.

¶33 This court has recognized "a narrow fraud in the inducement exception" to the economic loss doctrine. Kaloti Enters., Inc. v. Kellogg Sales Co., 2005 WI 111, ¶42, 283 Wis. 2d 555, 699 N.W.2d 205. We have emphasized the limited nature of this exception. See id.

¶34 As explained by the Michigan court of appeals, on whose opinion we relied in Kaloti Enters.,

> Fraud in the inducement presents a special situation where parties to a contract appear to negotiate freely——which normally would constitute grounds for invoking the economic loss doctrine——but where in fact the ability of one party to negotiate fair terms and make an informed decision is undermined by the other party's fraudulent behavior.

Huron Tool and Eng'g Co. v. Precision Consulting Servs., Inc., 532 N.W.2d 541, 545 (Mich. Ct. App. 1995).

¶35 Pursuant to this exception, "a fraud in the inducement claim is not barred by the economic loss doctrine where the fraud is extraneous to, rather than interwoven with, the contract."

11

Kaloti Enters., 283 Wis. 2d 555, ¶42 (citations and internal quotation omitted). To invoke the "fraud in the inducement" exception, a plaintiff must demonstrate three elements: (1) that the defendant engaged in an intentional misrepresentation; (2) that the misrepresentation occurred before the contract was formed; and (3) that the alleged misrepresentation was extraneous to the contract. Id. Stating the third element differently, the misrepresentation must "concern[] matters whose risk and responsibility did not relate to the quality or the characteristics of the goods for which the parties contracted or otherwise involved performance of the contract." Id.

¶36 A misrepresentation relates to the quality or characteristics of the goods sold if it is expressly dealt with in the contract's terms. Id., ¶43. If not addressed explicitly in the contract, a misrepresentation is still related to the quality or characteristics of the goods sold, precluding the application of the "fraud in the inducement" exception, if the misrepresentation informs the reasonable expectations of the parties to the risk of loss in the event the goods purchased did not meet the purchaser's expectations. Id. (citations omitted).

¶37 Hinrichs urges us to apply the "fraud in the inducement" exception here to preclude application of the economic loss doctrine. He contends that his prior purchases of adhesive from Dow do not preclude a claim where a subsequent purchase is induced by a misrepresentation.

¶38 We disagree with Hinrichs. His argument ignores a fatal shortcoming: that the alleged misrepresentation regarding the

12

effectiveness of Dow's adhesive is related to the quality and characteristics of the product in question and is thus not extraneous to the contract. As the court of appeals correctly stated, "[w]hether the Dow adhesive was properly functioning on the acrylic used in JeeTops directly relates to its quality and characteristics——in particular its ability to maintain a water-tight seal, which was one of its main functions." Hinrichs, No. 2017AP2361, unpublished slip op., ¶14. Hinrichs therefore cannot fulfill the third necessary element for application of the "fraud in the inducement" exception.

¶39 Therefore, we conclude that the "fraud in the inducement" exception to the economic loss doctrine does not apply to allow Hinrichs' common law misrepresentation claims to go forward because the alleged misrepresentation is related to the quality and characteristics of the product in question and is thus not extraneous to the contract.

C

¶40 We turn now to the "other property" exception to the economic loss doctrine. Pursuant to this exception, the economic loss doctrine "does not bar a commercial purchaser's claims based on personal injury or damage to property other than the product, or economic loss claims that are alleged in combination with noneconomic losses." Daanen & Janssen, Inc., 216 Wis. 2d at 402; Grams v. Milk Products, Inc., 2005 WI 112, ¶24, 283 Wis. 2d 511, 699 N.W.2d 167. In other words, the economic loss doctrine bars "the recovery of purely economic losses in consumer transactions through tort remedies where the only damage is to the product

13

purchased by the consumer." State Farm Fire and Cas. Co. v. Hague Quality Water, Int'l, 2013 WI App 10, ¶6, 345 Wis. 2d 741, 826 N.W.2d 412 (citing State Farm Mut. Auto. Ins. Co. v. Ford Motor Co., 225 Wis. 2d 305, 341, 348, 592 N.W.2d 201 (1999)).

¶41 To determine whether the "other property" exception applies, we apply a two part test. Id. First, we consider whether the defective product and the damaged property are part of an "integrated system." Id., ¶7. If the product and damaged property are part of such a system, then any damage to that property is considered to be damage to the product itself. Id. That is, "once a part becomes integrated into a completed product or system, the entire product or system ceases to be 'other property' for purposes of the economic loss doctrine." Selzer v. Brunsell Bros., Ltd., 2002 WI App 232, ¶38, 257 Wis. 2d 809, 652 N.W.2d 806 (citations omitted).[6]

---

[6] Hinrichs urges us to adopt a new test he terms the "product bargained for" test in determining whether products constitute an "integrated system." He explains such a test as based on "what the buyer agreed to buy and what the seller agreed to sell." In Hinrichs' view, the adhesive and JeeTops were not an integrated system because the bargain he entered into with Dow was for the purchase of the adhesive as a standalone product and not as part of a fully integrated system.

We decline to adopt Hinrichs' "product bargained for" analysis. Hinrichs does not identify any infirmity in the current test that would require us to depart from our prior case law. Further, we observe that the Wausau Tile court rejected a similar contention that the "integrated system" rule does not apply where a party buys only a component and not the fully integrated system. See Wausau Tile, Inc. v. Cty. Concrete Corp., 226 Wis. 2d 235, 252 n.10, 593 N.W.2d 445 (1999).

14

¶42 If the damaged property and the defective product are not part of an integrated system, we then apply the second part of the "other property" test——the "disappointed expectations" test. State Farm Fire and Cas. Co., 345 Wis. 2d 741, ¶7. In doing so, we focus on the product's expected function and whether the purchaser should have foreseen that the product could cause the damage at issue. Id. When claimed damages are merely the result of disappointed expectations of a product's performance, the exception will not apply and the economic loss doctrine will bar recovery in tort. Grams, 283 Wis. 2d 511, ¶3.

¶43 The court of appeals here concluded that the JeeTops and the adhesive were components of an integrated system. Hinrichs, No. 2017AP2361, unpublished slip op., ¶15. It reasoned that "[t]hey became components of an integrated system once the adhesive was applied to bond the JeeTops to the motor vehicle. At that point, they were integral parts of a greater whole and did not serve an independent purpose." Id. Accordingly, the court of appeals concluded that the "other property" exception did not apply. Id.

¶44 We agree with the court of appeals that the JeeTops and the adhesive formed an integrated system.[7] Wausau Tile, 226

---

[7] Because we determine that the JeeTops and adhesive were components of an integrated system, we need not consider the second part of the "other property" test——disappointed expectations. See State Farm Fire and Cas. Co. v. Hague Quality Water, Int'l, 2013 WI App 10, ¶7, 345 Wis. 2d 741, 826 N.W.2d 412 ("If the damaged property is not part of an integrated system with the defective product, then courts apply the 'disappointed expectations' test . . . .") (emphasis added).

Wis. 2d 235, provides a useful analogy.  In that case, Wausau Tile purchased cement from Medusa Corporation for use in manufacturing concrete paving blocks.  Id. at 241.  Wausau Tile claimed that the concrete it received from Medusa was defective and brought claims against Medusa sounding in both contract and tort.  Id. at 242.

¶45  This court determined that the economic loss doctrine barred Wausau Tile's tort claims.  Id. at 241.  Rejecting Wausau Tile's argument that the "other property" exception applies, this court reasoned that "the pavers were integrated systems comprised of several component materials, including Medusa's cement."  Id. at 251.  "[V]arious substances incorporated into finished products constitute integral components of those products."  Id. (citation omitted).

¶46  Similarly here, when the adhesive joins a JeeTops to the body of a Jeep, it creates an integrated system.  An adhesive does not function on its own——its basic purpose is to integrate two parts by adhering them together.  Like the court of appeals did, we see no relevant difference between the products here and others that courts have determined to be components of an integrated system, such as the cement in a concrete paving block in Wausau Tile, a window in a house,[8] a gear in a printing press,[9] a generator

---

[8] Selzer v. Brunsell Bros., Ltd., 2002 WI App 232, ¶38, 257 Wis. 2d 809, 652 N.W.2d 806.

[9] Cincinnati Ins. Co. v. AM Int'l, Inc., 224 Wis. 2d 456, 463, 591 N.W.2d 869 (Ct. App. 1999).

connected to a turbine,[10] and a drive system in a helicopter.[11] <u>Hinrichs</u>, No. 2017AP2361, unpublished slip op., ¶15 n.2 (citing <u>Selzer</u>, 257 Wis. 2d 809, ¶¶38-39).

¶47 Accordingly, we conclude that the "other property" exception to the economic loss doctrine does not apply to allow Hinrichs' common law misrepresentation claims to go forward because the JeeTops and adhesive are components of an integrated system.

IV

A

¶48 We address next Hinrichs' claim under Wis. Stat. § 100.18. Section 100.18(1) provides in relevant part:

> No person, firm, corporation or association, or agent or employee thereof, with intent to sell . . . merchandise . . . or with intent to induce the public in any manner to enter into any contract or obligation relating to the purchase, . . . shall make, publish, disseminate, circulate, or place before the public, or cause, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public, . . . an advertisement, announcement, statement or representation of any kind to the public . . . contain[ing] any assertion, representation or statement of fact which is untrue, deceptive or misleading.

¶49 This section is part of Wisconsin's Deceptive Trade Practices Act, the purpose of which is "to protect consumers from

---

[10] <u>Midwhey Powder Co., Inc. v. Clayton Indus.</u>, 157 Wis. 2d 585, 590-91, 460 N.W.2d 426 (Ct. App. 1990).

[11] <u>Midwest Helicopters Airways, Inc. v. Sikorsky Aircraft, Div. of United Technologies Corp.</u>, 849 F. Supp. 666, 672 (E.D. Wis. 1994), <u>aff'd</u> Nos. 94-1645, 94-1700, 1994 WL 682906 (7th Cir. 1994).

17

untrue, deceptive or misleading representations to promote the sale of a product." Bonn v. Haubrich, 123 Wis. 2d 168, 173, 366 N.W.2d 503 (Ct. App. 1985). It is also intended "to deter sellers from making false and misleading representations in order to protect the public." Novell v. Migliaccio, 2008 WI 44, ¶30, 309 Wis. 2d 132, 749 N.W.2d 544.

¶50  As a threshold matter, we consider whether the economic loss doctrine bars claims made pursuant to Wis. Stat. § 100.18. The court of appeals has previously concluded that the economic loss doctrine does not serve as such a bar. Kailin v. Armstrong, 2002 WI App 70, ¶43, 252 Wis. 2d 676, 643 N.W.2d 132.

¶51  In Kailin, the court of appeals rejected an argument that Wis. Stat. § 100.18 does not create a new cause of action, but instead provides a remedy for common law claims. Id., ¶42. Because Wis. Stat. § 100.18 creates a new cause of action, the court of appeals therefore saw "nothing supporting [the] conclusion that the economic loss doctrine applies to claims under § 100.18." Id. The Kailin court further found "no argument to link the rationale for the economic loss doctrine to the purpose of § 100.18 . . . ." Id.

> The legislature has plainly chosen in § 100.18 to provide protection and remedies for false advertising that do not exist at common law. The underpinnings of the economic loss doctrine——protecting parties' freedom to allocate economic risk by contract, encouraging the purchaser to assume, allocate, or insure against that risk, and maintaining the fundamental distinction between tort and contract law——are either irrelevant to, or inconsistent with, that legislative choice.

Id.

¶52 Dow urges us to reject Kailin's approach and apply the economic loss doctrine to bar the Wis. Stat. § 100.18 claim in this case. It contends that Kailin was decided in the context of a consumer relationship, and is therefore distinguishable from the sophisticated commercial relationship in which the claim arises here.

¶53 For support, Dow turns to two federal district court cases. First, in MBI Acquisition Partners, L.P. v. Chronicle Publ'g Co., 301 F. Supp. 2d 873, 885-86 (W.D. Wis. 2002), the court granted the defendants summary judgment on the plaintiff's Wis. Stat. § 100.18 claims on the basis of the economic loss doctrine. Second, in Weather Shield Mfg., Inc. v. PPG Indus., Inc., No. 97-C-707-S, 1998 WL 469913, at *6 (W.D. Wis. June 11, 1998), the court applied the economic loss doctrine to § 100.18 claims, reasoning, "exempting § 100.18 claims from the effects of the economic loss doctrine would virtually nullify the doctrine since § 100.18 is broad enough to encompass nearly every misrepresentation claim in the commercial sales context, and claims arising from product failure can readily be recast as misrepresentation claims."

¶54 The federal court cases on which Dow relies are not binding on this court. State v. Wood, 2010 WI 17, ¶18, 323 Wis. 2d 321, 780 N.W.2d 63. Further, MBI Acquisition Partners, the one published case Dow cites in support, applied the economic loss doctrine to § 100.18 claims with little in the way of analysis. See MBI Acquisition Partners, 301 F. Supp. 2d at 885-86.

¶55 We reject Dow's argument. Rather than adopting nonbinding authority with scant analysis, we instead reaffirm the Kailin court's determination on this issue. Wisconsin Stat. § 100.18 created a new cause of action, providing "protection and remedies for false advertising that do not exist at common law." Kailin, 252 Wis. 2d 676, ¶42; see also K & S Tool & Die Corp. v. Perfection Mach. Sales, Inc., 2007 WI 70, ¶36, 301 Wis. 2d 109, 732 N.W.2d 792 (determining that "the legislature created a distinct cause of action" pursuant to § 100.18). As the Kailin court stated, the policies underlying the economic loss doctrine——the allocation of risk and the distinction between tort and contract law——are irrelevant to the legislature's choice to provide a purely statutory cause of action and remedy by way of § 100.18. Kailin, 252 Wis. 2d 676, ¶42. A common law restriction like the economic loss doctrine therefore does not apply to Hinrichs' statutory claim.

¶56 Therefore, we conclude that the economic loss doctrine does not serve as a bar to claims made under Wis. Stat. § 100.18.

B

¶57 Having determined that the economic loss doctrine does not bar claims made pursuant to Wis. Stat. § 100.18, we turn now to Dow's assertion that Hinrichs is not "the public" for purposes of the statute.

¶58 To prevail on a claim under Wis. Stat. § 100.18, a plaintiff must demonstrate that the defendant made a representation to "the public." K & S Tool & Die Corp., 301

Wis. 2d 109, ¶19. "The public" is not defined in § 100.18, although courts have interpreted the term. Id., ¶20.

¶59 In the seminal case on the subject, Automatic Merchandisers, a company was alleged to have engaged in a marketing scheme to sell vending machines at prices in excess of their actual value. 64 Wis. 2d at 660. The company placed classified advertisements in newspapers, and subsequently contacted those who responded to the advertisement at their homes with deceptive promotional materials and oral representations. Id.

¶60 In its analysis, the Automatic Merchandisers court examined "whether or not Sec. 100.18(1), Stats. applies to oral representations made in private conversations to prospective purchasers of the defendants' products." Id. at 662. The court determined that the statute applies in such a situation: "While the representations were made privately to prospective purchasers their only relationship to the defendants was that they had responded to advertisements in the classified sections of newspapers. These persons were members of 'the public' as that term is used in this statute." Id. at 663.

¶61 Further, the court recognized that "the number of people involved is not controlling and that 'the public' may be only one person." Id. at 664 (citing Ford Hydro-Electric Co. v. Town of Aurora, 206 Wis. 489, 240 N.W. 418 (1932)). "The use of the term 'the public' does not mean that the statements be made to a large audience." Id. Indeed, the use of the term "contemplates the individual action of one member of the public." Id. Rather than

21

the number of people involved, "[t]he important factor is whether there is some particular relationship between the parties." Id.

¶62 Following Automatic Merchandisers, Wisconsin courts have consistently applied the "particular relationship" test in determining whether a plaintiff is a member of "the public" for purposes of Wis. Stat. § 100.18(1). See, e.g., K & S Tool & Die Corp., 301 Wis. 2d 109, ¶27; Kailin, 252 Wis. 2d 676, ¶44. The test provides that "a plaintiff remains a member of 'the public' unless a particular relationship exists between him or her and the defendant." K & S Tool & Die Corp., 301 Wis. 2d 109, ¶27. Whether such a relationship exists is a question of fact that depends on the peculiar facts and circumstances of the case. Id., ¶¶27, 30 (citing Cawker v. Meyer, 147 Wis. 320, 326, 133 N.W. 157 (1911)).

¶63 Dow contends that our previously established framework of analysis strays from the plain language of Wis. Stat. § 100.18(1). Specifically, it asserts that one person cannot be "the public" and that consequently we should overrule Automatic Merchandisers. In Dow's view, Automatic Merchandisers is inconsistent with the plain meaning of "public."

¶64 We decline Dow's invitation to overrule Automatic Merchandisers. First, as Automatic Merchandisers states, the use of "the public" in Wis. Stat. § 100.18(1) "contemplates the individual action of one member of the public." Automatic Merchs., 64 Wis. 2d at 664; see also Wis JI——Civil 2418 (2017) (referring to a representation made to "one or more members of the public"). "While the readily apparent legislative goal underlying the enactment of § 100.18 is to protect all members of [the] public

22

from fraudulent advertisements and deceptive marketing practices, in its practical application, the section individually protects each member of the public." Jersild v. Aker, 775 F. Supp. 1198, 1205 (E.D. Wis. 1991).

¶65 For example, in Automatic Merchandisers, the misrepresentation induced action when any individual member of the public entered into a private interaction with the vending machine company. See Automatic Merchs., 64 Wis. 2d at 660. If only one person saw the newspaper ad at issue, responded, and formed a relationship with Automatic Merchandisers, Wis. Stat. § 100.18(1) was implicated. Similarly here, a single representation to a single person is enough to trigger § 100.18(1)'s protections.

¶66 Second, the doctrine of stare decisis[12] militates against the precipitous change in the law that Dow seeks. Stare decisis is fundamental to the rule of law. Johnson Controls, Inc. v. Emp'rs Ins. of Wausau, 2003 WI 108, ¶94, 264 Wis. 2d 60, 655 N.W.2d 227. Indeed, "[t]his court follows the doctrine of stare decisis scrupulously because of our abiding respect for the rule of law." Id.

¶67 "Fidelity to precedent ensures that existing law will not be abandoned lightly. When existing law is open to revision

---

[12] "Stare decisis" refers to the principle that requires courts to "stand by things decided." State v. Harrell, 199 Wis. 2d 654, 667, 546 N.W.2d 115 (1996) (Abrahamson, J., concurring); see Black's Law Dictionary 1626 (10th ed. 2014) (defining "stare decisis" as "[t]he doctrine of precedent, under which a court must follow earlier judicial decisions when the same points arise again in litigation").

23

in every case, deciding cases becomes a mere exercise of judicial will, with arbitrary and unpredictable results." Schultz v. Natwick, 2002 WI 125, ¶37, 257 Wis. 2d 19, 653 N.W.2d 266 (internal quotation and citations omitted). Accordingly, any departure from stare decisis requires "special justification." Id.

¶68 Our case law has identified several criteria for overturning prior cases. Johnson Controls, Inc., 264 Wis. 2d 60, ¶98. "First, changes or developments in the law have undermined the rationale behind a decision." Id. "Second, there is a need to make a decision correspond to newly ascertained facts." Id. "Third, there is a showing that the precedent has become detrimental to coherence and consistency in the law." Id. We also consider "whether the prior decision is unsound in principle, whether it is unworkable in practice, and whether reliance interests are implicated." Id., ¶99.

¶69 In this case, these criteria do not support overturning Automatic Merchandisers. As analyzed above, its interpretation is consistent with both the plain language and the purpose of Wis. Stat. § 100.18(1). Cases subsequent to Automatic Merchandisers have consistently and coherently followed it. See, e.g., K & S Tool & Die Corp., 301 Wis. 2d 109, ¶¶23-27; Bonn, 123 Wis. 2d at 173 n.4. The particular relationship test is clear and workable.

¶70 Accordingly, we reaffirm that one person can be "the public" for purposes of Wis. Stat. § 100.18(1) and decline Dow's invitation to overrule Automatic Merchandisers. The court of appeals correctly determined that dismissal for failure to meet

24

"the public" component of a § 100.18 claim in this case was in error.

¶71  We emphasize that we are not determining in this opinion whether Hinrichs is in fact a member of "the public," but rather that we agree with the court of appeals that dismissal on that ground was in error.  See Hinrichs, No. 2017AP2361, unpublished slip op., ¶22.  Whether Hinrichs and Dow were in a "particular relationship" so as to remove Hinrichs from the realm of "the public" pursuant to Wis. Stat. § 100.18(1) remains an open question to be determined by the circuit court after further discovery. See K & S Tool & Die Corp., 301 Wis. 2d 109, ¶27.

C

¶72  Finally, we address whether Hinrichs' claim pursuant to Wis. Stat. § 100.18 is subject to the heightened pleading standard set forth by § 802.03(2) for claims of fraud and whether Hinrichs' complaint states a claim under the appropriate standard.  This is an issue of first impression that was not addressed by the court of appeals in this case.

¶73  Wisconsin Stat. § 802.03(2) provides in relevant part: "In all averments of fraud . . . the circumstances constituting

fraud . . . shall be stated with particularity."[13] To put defendants on notice so that they can prepare meaningful responses, this statute requires that allegations of fraud specify the particular individuals involved, where and when misrepresentations occurred, and to whom the misrepresentations were made. Kaloti Enters., Inc., 283 Wis. 2d 555, ¶21 (citations omitted). In other words, "[p]articularity means the 'who, what, when, where and how.'" Ferris v. Location 3 Corp., 2011 WI App 134, ¶10, 337 Wis. 2d 155, 804 N.W.2d 822 (citing Friends of Kenwood v. Green, 2000 WI App 217, ¶14, 239 Wis. 2d 78, 619 N.W.2d 271).

¶74 Dow asserts that Wis. Stat. § 802.03(2)'s heightened pleading requirements apply to Hinrichs' claim under Wis. Stat. § 100.18(1). Hinrichs apparently concedes this point and accordingly contends that his complaint was sufficient to meet the heightened standard.

¶75 However, we are not bound by Hinrichs' apparent concession of law. See Fletcher v. Eagle River Memorial Hosp., Inc., 156 Wis. 2d 165, 179, 456 N.W.2d 788 (1990). Consequently,

---

[13] The Wis. Stat. § 802.03(2) pleading standard for fraud claims is more stringent than the standard employed for most other claims. Generally, for claims not subject to § 802.03(2) a plaintiff need only plead "[a] short and plain statement of the claim, identifying the transaction or occurrence or series of transactions or occurrences out of which the claim arises and showing that the pleader is entitled to relief." Wis. Stat. § 802.02(1)(a); see Cattau v. Nat'l Ins. Servs. of Wis., 2019 WI 46, ¶4, 386 Wis. 2d 515, 926 N.W.2d 756 (per curiam); Data Key Partners v. Permira Advisers LLC, 2014 WI 86, ¶21, 356 Wis. 2d 665, 849 Wis. 2d 693 (citing Strid v. Converse, 111 Wis. 2d 418, 422-23, 331 N.W.2d 350 (1983)). Thus, we refer to § 802.03(2) as creating a "heightened" standard.

we examine the question Dow poses and arrive at a contrary conclusion.

¶76  By its terms, Wis. Stat. § 802.03(2) applies to "all averments of fraud."  Although entitled "Fraudulent representations," the text of Wis. Stat. § 100.18 does not include the word "fraud."  The title of a statute may be helpful in resolving ambiguities in a statute, but it is not part of the statute.  State v. Dorsey, 2018 WI 10, ¶30, 379 Wis. 2d 386, 906 N.W.2d 158; Wis. Stat. § 990.001(6).  Therefore, we cannot rely on the title of "fraudulent representations" to determine that § 100.18 is a "fraud" statute to which § 802.03(2) applies.

¶77 Case law has previously indicated that Wis. Stat. § 100.18 creates a new cause of action and does not simply provide a remedy for common law fraud claims.  See Kailin, 252 Wis. 2d 676, ¶42.  Through the enactment of § 100.18, "[t]he legislature has plainly chosen . . . to provide protection and remedies for false advertising that do not exist at common law."  Id.  Kailin thus indicates that common law restrictions do not apply to § 100.18.  See id.  That Wis. Stat. § 802.03(2) may apply to common law fraud claims therefore does not affect our determination of whether it also applies to purely statutory claims under § 100.18.

¶78  Further, considering the purpose of Wis. Stat. § 100.18 we arrive at the conclusion that the application of heightened pleading standards would run counter to that purpose.  As stated, § 100.18 serves a dual purpose of protecting consumers and deterring sellers from making deceptive representations.  See supra, ¶49; Bonn, 123 Wis. 2d at 173; Novell, 309 Wis. 2d 132,

27

¶30.  It is aimed at preventing "certain activities deemed harmful to citizens' economic and social well-being."  Tim Torres Enters., Inc. v. Linscott, 142 Wis. 2d 56, 72, 416 N.W.2d 670 (Ct. App. 1987).

¶79  "Section 100.18 has maintained its central importance in consumer protection for more than a century since its enactment."  John S. Greene, Navigating Wisconsin's Consumer Protection System, 90 Wis. Law. 22, 24 (Sept. 2017); see also James D. Jeffries, Protection for Consumers Against Unfair and Deceptive Business Practices in Wisconsin, 57 Marq. L. Rev. 559, 595-605 (1974).  "The state, individual consumers, and business consumers regularly invoke Wis. Stat, section 100.18 to pursue claims of deceptive representations."  Greene, supra, at 24.

¶80  Consistent with this history and purpose, Wis. Stat. § 100.18(11)(b)2. provides for a private cause of action.[14]  As

---

[14] Wis. Stat. § 100.18(11)(b)2. provides:

Any person suffering pecuniary loss because of a violation of this section by any other person may sue in any court of competent jurisdiction and shall recover such pecuniary loss, together with costs, including reasonable attorney fees, except that no attorney fees may be recovered from a person licensed under ch. 452 while that person is engaged in real estate practice, as defined in s. 452.01(6).  Any person suffering pecuniary loss because of a violation by any other person of any injunction issued under this section may sue for damages therefor in any court of competent jurisdiction and shall recover twice the amount of such pecuniary loss, together with costs, including reasonable attorney fees, except that no attorney fees may be recovered from a person licensed under ch. 452 while that person is engaged in real estate practice, as defined in s. 452.01(6).

28

such, a successful plaintiff is entitled to recover pecuniary losses, costs, and reasonable attorney fees. § 100.18(11)(b)2.; see Mark R. Hinkston, Protecting Consumers in the Modern Age: Wisconsin's Deceptive Trade Practices Act, 81 Wis. Law. 14, 16 (Oct. 2008). Double damages are available for any violation of an injunction previously issued pursuant to § 100.18. § 100.18(11)(b)2.; see Wis. Stat. § 100.18(11)(d) (authorizing the Department of Agriculture, Trade, and Consumer Protection, the Department of Justice, or any district attorney to seek a temporary or permanent injunction of "any violation of this section").

¶81 "We have previously recognized that an individual who brings an action to enforce a statutory right may be acting as a 'private attorney general' to enforce the public's rights under the statute." Watkins v. Labor and Indus. Review Comm'n, 117 Wis. 2d 753, 764, 345 N.W.2d 482 (1984) (citing Shands v. Castrovinci, 115 Wis. 2d 352, 358, 340 N.W.2d 506 (1983)). Absent such a private right of action and the prospect of attorney fees, many victims of deceptive representations "would not be in an economic position to advance the private and public interest at stake." Estate of Miller v. Storey, 2017 WI 99, ¶58, 378 Wis. 2d 358, 903 N.W.2d 759. We must look at Wis. Stat. § 100.18 through this lens when examining the applicable pleading standard.

¶82 Heightened pleading requirements may prevent private, pro se parties from seeking redress for deceptive representations. Such a requirement would run counter to Wis. Stat. § 100.18's purpose as a consumer protection statute with a broad scope. See Tim Torres Enters., Inc., 142 Wis. 2d at 72 ("The broad remedial

29

scope of sec. 100.18 and its protective purpose make it similar to the remedial provisions of the federal antitrust laws in that to eliminate or rectify a wrong the traditional standards of proof may be relaxed if necessary.").

¶83 Accordingly, we conclude that the heightened pleading standard set forth by Wis. Stat. § 802.03(2) for claims of fraud does not apply to claims made under Wis. Stat. § 100.18.

¶84 We therefore apply general pleading standards to determine if Hinrichs' complaint states a claim. Thus, we must examine whether Hinrichs' complaint pleads facts, which if true, would entitle him to relief. See Cattau v. Nat'l Ins. Servs. of Wis., 2019 WI 46, ¶4, 386 Wis. 2d 515, 926 N.W.2d 756 (per curiam); Data Key Partners v. Permira Advisers LLC, 2014 WI 86, ¶21, 356 Wis. 2d 665, 849 Wis. 2d 693 (citing Strid v. Converse, 111 Wis. 2d 418, 422-23, 331 N.W.2d 350 (1983)).

¶85 Specifically with regard to a claim made pursuant to Wis. Stat. § 100.18(1), a plaintiff must allege facts that would fulfill three elements: (1) the defendant made a representation to one or more members of the public with the intent to induce an obligation; (2) the representation was untrue, deceptive or misleading; and (3) the representation materially induced a pecuniary loss to the plaintiff. Novell, 309 Wis. 2d 132, ¶49; see Wis JI—Civil 2418 (2017) (referring to "one or more members of the public[,]" consistent with this court's conclusion in Automatic Merchs., 64 Wis. 2d at 663-64). Hinrichs' complaint alleges facts that, if true, meet each of these elements.

¶86 First, as analyzed above, the complaint alleges that Dow made a representation to "the public" within the meaning of Wis. Stat. § 100.18. The complaint further alleges that the representation was made "with the intent of inducing Mr. Hinrichs to continue purchasing Dow adhesives."

¶87 Second, as the court of appeals determined, "the complaint sufficiently alleges that Dow made representations that were untrue, deceptive or misleading." Hinrichs, No. 2017AP2361, unpublished slip op., ¶23. Specifically, the complaint alleges that "[t]he report prepared and produced by Dow claimed the Dow adhesive was properly functioning on the acrylic used by Mr. Hinrichs in the JeeTops panels . . . ." The complaint further alleges that this representation was untrue, deceptive, or misleading in that the Dow adhesive actually was the cause of the structural breakdown of the JeeTops panels.

¶88 Finally, the complaint amply alleges that the representation materially induced a pecuniary loss to Hinrichs. Hinrichs alleges that Dow's representations destroyed his ability to sell further JeeTops panels by negatively affecting the product's reputation. The complaint specifically references negative commentary on social media and elsewhere within the Jeep enthusiast community, as well as allegations that high profile customers stopped purchasing the product and that dealers dropped JeeTops from their product lines.

¶89 We therefore conclude that Hinrichs' complaint states a claim under the general pleading standard.

V

¶90 In sum, with regard to Hinrichs' common law claims, we conclude that the "fraud in the inducement" exception to the economic loss doctrine does not apply to allow Hinrichs' common law claims to go forward because the alleged misrepresentation is related to the quality and characteristics of the product in question and is thus not extraneous to the contract. We further conclude that the "other property" exception to the economic loss doctrine does not apply to allow Hinrichs' common law claims to go forward because the JeeTops and adhesive are components of an integrated system.

¶91 Concerning Hinrichs' statutory claims, we conclude first that the economic loss doctrine does not serve as a bar to claims made under Wis. Stat. § 100.18. We conclude second that one person can be "the public" for purposes of § 100.18(1) and decline Dow's invitation to overrule Automatic Merchandisers. The court of appeals correctly determined that dismissal for failure to meet "the public" component of a § 100.18 claim in this case was in error. Finally, we conclude that the heightened pleading standard set forth by Wis. Stat. § 802.03(2) for claims of fraud does not apply to claims made under Wis. Stat. § 100.18 and that Hinrichs' complaint states a claim under the general pleading standard.

¶92 Accordingly, we affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶93 DANIEL KELLY and BRIAN HAGEDORN, JJ., did not participate.

¶94 REBECCA GRASSL BRADLEY, J. *(concurring in part, dissenting in part).* I agree with the majority's decision to affirm the court of appeals' dismissal of Hinrichs'[1] common law misrepresentation claims because the economic loss doctrine bars them, and the "other property" and "fraudulent inducement" exceptions to that doctrine do not apply. Accordingly, I join parts I, II, and III of the majority opinion. However, the majority's interpretation of Wis. Stat. § 100.18(1) (2015-2016)[2] does not apply the plain meaning of "the public," which would exclude Hinrichs based upon the particularized statements Dow made solely to Hinrichs within the context of the ongoing business relationship between the parties. I would therefore reverse the court of appeals' decision, which allows Hinrichs' § 100.18 fraudulent representation claim against Dow to proceed despite the absence of any "advertisement, announcement, statement or representation" "to the public" or "to induce the public" as required under the statute. Accordingly, I dissent from part IV.B of the majority opinion.[3]

---

[1] Like the majority, I use "Hinrichs" to refer to Chris Hinrichs and Autovation Limited collectively.

[2] All subsequent references to the Wisconsin Statutes are to the 2015-16 version unless otherwise indicated.

[3] Because I conclude Hinrichs is not a member of "the public" within the meaning of Wis. Stat. § 100.18(1) and the statute therefore does not provide an avenue for Hinrichs' claim, I need not address whether the economic loss doctrine bars a claim under this statute (part IV.A of the majority opinion) or whether the heightened pleading requirements apply to § 100.18(1) (part IV.C of the majority opinion).

I

¶95  The foundation for Wis. Stat. § 100.18(1) arose in 1913, when the Wisconsin Legislature first enacted a law prohibiting untrue and deceptive advertisements to induce the purchase of a good.  See § 1, ch. 510, Laws of 1913.  In 1925, the legislature adopted the precursor to the current version of § 100.18(1).  See § 2, ch. 264, Laws of 1925.  In the text of the original Act, like the current language of § 100.18(1), the phrase "the public" appeared five times.  See § 100.18(1); § 2, ch. 264, Laws of 1925. The text of § 100.18(1) currently comprises a single lengthy sentence, prompting one court to remark "its length would put even Dickens to shame."[4]  Eliminating repetitive words, as well as those portions inapplicable in this case, condenses the statute to the following more readable statement:

> No . . . corporation . . . with intent to  sell . . . any . . . merchandise . . . to the public . . . or with intent to induce the public . . . to enter into any contract or obligation relating to the purchase . . . of any . . . merchandise . . . shall  make . . . or  place before the public, or cause . . . to be made . . . or placed                   before                   the public, in this state . . . an advertisement . . . statement or representation of any kind to the public relating     to     such     purchase . . . which advertisement, . . . statement    or    representation contains any assertion, representation or statement of fact which is untrue, deceptive or misleading.

§ 100.18(1) (emphasis added).  Based merely on the number of times the phrase appears in the statutory text, "the public" has manifest importance to the law's meaning.

---

[4] Uniek, Inc. v. Dollar General Corp., 474 F. Supp. 2d 1034, 1036 (W.D. Wis. 2007).

¶96 This court's first interpretation of the meaning of the phrase "the public" appeared in State v. Automatic Merchandisers of Am., Inc., 64 Wis. 2d 659, 663-64, 221 N.W.2d 683 (1974). A full recitation of that case is unnecessary here, as the majority already outlined it. See majority op., ¶¶59-61. In Automatic Merchandisers, the court held Wis. Stat. § 100.18(1) reaches private face-to-face oral representations between a seller and prospective purchasers responding to newspaper advertisements. Automatic Merchs. of Am., Inc., 64 Wis. 2d at 663. The court recognized that "in some situations one person can constitute the public" and the alleged misrepresentation need not be communicated to a wide audience. Id. at 664. Generally, the court concluded § 100.18 "protect[s] the residents of Wisconsin from any untrue, deceptive or misleading representations made to promote the sale of a product." Id. at 663. The court identified as "[t]he important factor" in defining "the public" whether there is a "particular relationship" between the parties. Id. at 664 (citing Cawker v. Meyer, 147 Wis. 320, 326, 133 N.W. 157 (1911)).

¶97 In this case, the majority expands Automatic Merchandisers' interpretation of "the public" beyond the plain meaning of Wis. Stat. § 100.18. While just a single individual may receive a representation prohibited under § 100.18, in order for the representation to run afoul of that statute, it must have been "made . . . or placed before the public." See Automatic Merchs., 64 Wis. 2d at 664; majority op., ¶¶64-65. In Automatic Merchandisers, "the representations were made privately to prospective purchasers" whose "only relationship" to the sellers

3

consisted of responding "to advertisements in the classified sections of newspapers." Automatic Merchs., 64 Wis. 2d at 663. The court's statement that "'the public' may be only one person" simply recognized that even if only one prospective purchaser responded to the advertisement and heard the misrepresentation from the seller, then that person would have a claim under § 100.18(1) as a member of "the public." See id. at 664 (citations omitted). In contrast, at the time Hinrichs alleges Dow made a misrepresentation regarding its adhesive, Hinrichs and Dow were businesses in a commercial relationship. Because Hinrichs alleges Dow's misrepresentation was made solely to Hinrichs, and in regard to Hinrichs' unique application of Dow's adhesive to Hinrichs' particular product, unlike the generalized representations made privately in Automatic Merchandisers to anyone responding to classified advertisements, Dow's representation was not made to "the public," and therefore does not fall within the scope of § 100.18.

¶98 A textual approach to statutory interpretation gives language "its common, ordinary, and accepted meaning . . . ." State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. We presume the "legislature says in a statute what it means and means in a statute what it says there." Milwaukee Dist. Council 48 v. Milwaukee Cty., 2019 WI 24, ¶25, 385 Wis. 2d 748, 924 N.W.2d 153 (quoting Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992)); see also Kalal, 271 Wis. 2d 633, ¶39 (quoting the same). As a fundamental tenet of statutory interpretation, where possible, we render no

word in a statute surplusage, but instead give meaning to every word.  See, e.g., Enbridge Energy Co., Inc. v. Dane Cty., 2019 WI 78, ¶28, 387 Wis. 2d 687, 929 N.W.2d 572 (Statutory construction should not "create[] an avoidable surplusage problem[;]" rather, "'[i]f possible, every word and every provision is to be given effect (verba cum effectu sunt accipienda).  None should be ignored.  None should needlessly be given an interpretation that causes it . . . to have no consequence.'"  (quoting Antonin Scalia & Bryan Garner, Reading Law:  The Interpretation of Legal Texts 174 (2012)));  see also Kalal, 271 Wis. 2d 633, ¶46 ("Statutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage."  (citations omitted)); State v. Martin, 162 Wis. 2d 883, 894, 470 N.W.2d 900 (1991) ("A statute should be construed so that no word or clause shall be rendered surplusage and every word if possible should be given effect." (quoting Donaldson v. State, 93 Wis. 2d 306, 315, 286 N.W.2d 817 (1980))).

¶99  "[T]he ordinary and common meaning of a doubtful word may be established by the definition of a recognized dictionary." In re Nottingham's Estate, 46 Wis. 2d 580, 588, 175 N.W.2d 640 (1970).  Wisconsin Stat. § 100.18(1) uses the word "public" as a noun.  When used in this manner, the word "public" refers to people in the general community. See Public, Black's Law Dictionary (11th ed. 2019) ("The people of a country or community as a whole . . . ."); Public, American Heritage Dictionary (5th ed. 2011) ("The community or the people as a whole."); Public, Oxford Dictionary (6th ed. 2007) ("People collectively; the members of

5

the community."); see also Public, Funk & Wagnalls New Standard Dictionary (1923) ("The people collectively, or in general, as of a particular locality, state, or nation, or of the world at large . . . ."); Public, Black's Law Dictionary (2d ed. 1910) ("As a noun, the word 'public' denotes the whole body politic, or the aggregate of the citizens of a state, district, or municipality." (citations omitted)). Read in conjunction with Automatic Merchandisers, these definitions inform the interpretation of "the public" under § 100.18(1), indicating that the prohibited "representation" must be "made" or "placed before" people within the general community. See Automatic Merchs., 64 Wis. 2d at 664. In Automatic Merchandisers, the prohibited representations were made to whomever responded to the seller's classified newspaper advertisements published to the general community. Id. at 664.

¶100 The majority's construction of "the public," as used in Wis. Stat. § 100.18(1), would include a business in an ongoing commercial relationship with another business whose alleged misrepresentation relates to a particularized use of the product and was directed at no one other than that purchaser. Automatic Merchandisers does not support this reading. Instead, that case interpreted § 100.18(1) as protecting "the residents of Wisconsin"——meaning anyone who happened to respond to classified advertising directed at the community in general. Automatic Merchs., 64 Wis. 2d at 663-64. In similar fashion, "[t]he word 'public' has been construed under comparable statutes to mean that any person who invites the trade of the general populace in a given area, or who is engaged in his principal business, is dealing with

6

the 'public.'" James D. Jeffries, Protection for Consumers Against Unfair and Deceptive Business Practices in Wisconsin, 57 Marq. L. Rev. 559, 561 n.14 (1974) (emphasis added) (citing to cases in Texas, Michigan, Missouri, and Wisconsin). The email from Dow's agent to Hinrichs conveyed lab testing reports and results——requested by Hinrichs——regarding the application of Dow's adhesive to Hinrichs' product. The representation in that email responded to Hinrichs' unique concerns and in no way invited the trade of the general populace in a given area.

¶101 The majority broadens the meaning of a "representation" "made . . . or placed before the public" to encompass an email between two businesses in a commercial relationship. See majority op., ¶70.[5] Under the majority's interpretation, "the public" means everyone and therefore has no meaning, which creates an avoidable surplusage problem: the majority causes "the public" to have no operative effect whatsoever in the statute. As the District Court for the Western District of Wisconsin has recognized, this court's ever-expanding construction of "the public" under Wis. Stat.

---

[5] The majority blurs the boundary between statutory claims under Wis. Stat. § 100.18(1) (the Deceptive Trade Practices Act) and breach of contract claims under general contract law. See generally Donald R. Stroud III, Beyond Deception: Finding Prudential Boundaries Between Breach of Contract and Deceptive Trade Practices Act Violations in Wisconsin, 93 Marq. L. Rev. 1157 (2010) (criticizing this court's decision in K & S Tool & Die Corp. v. Perfection Machinery Sales, Inc., 2007 WI 70, 301 Wis. 2d 109, 732 N.W.2d 792, allowing for the possible extension of § 100.18(1) claims to commercial parties, and discussing the impact on contract law). The majority in this case permits commercial parties to avoid negotiated contract terms by bringing DTPA claims in lieu of breach of contract actions, thereby escaping bargained-for liability limitations and remedies and upending the parties' allocation of risk. See Stroud, supra at 1159, 1164-72.

§ 100.18(1) renders it "anachronistic to interpret 'the public' as having any limitation" and now "any person or entity is a member of the public." Uniek, Inc. v. Dollar General Corp., 474 F. Supp. 2d 1034, 1038 (W.D. Wis. 2007). However outmoded under this court's errant jurisprudence, "the public" must have some parameters in order to avoid being rendered superfluous. Excising "the public" from the statutory text yields the same meaning the majority gives it:

> No . . . corporation . . . with intent to sell . . . any . . . merchandise . . . shall make . . . in this state . . . an advertisement . . . statement or representation of any kind . . . relating to such purchase . . . which advertisement, . . . statement or representation contains any assertion, representation or statement of fact which is untrue, deceptive or misleading.

The majority reads "the public" out of the statute entirely by "needlessly" giving that phrase "an interpretation that causes it . . . to have no consequence." See Scalia & Garner, supra ¶98, at 174.

¶102 In cases with similar facts, other courts concluded that "the public" cannot mean two businesses in an ongoing commercial relationship. For example, the Uniek court held a distributor was not a member of "the public" within the meaning of Wis. Stat. § 100.18(1) because it had a 13-year business relationship with the defendant. Uniek, 474 F. Supp. 2d at 1039-40. The Uniek court reasoned that if anything were to distinguish the distributor from "the public," surely this longstanding business relationship would. Id. at 1040. Although not specifically based on § 100.18(1), our court of appeals clarified the common, ordinary,

8

and accepted meaning of "the public" by differentiating private clubs patronized by members only, from restaurants "open to the public." See City of Wausau v. Jusufi, 2009 WI App 17, ¶¶14-16, 315 Wis. 2d 780, 763 N.W.2d 201. In Jusufi, the court of appeals concluded a smoking ban ordinance did not violate equal protection even though it treated restaurants differently than private clubs. See id., ¶1. The court of appeals held there was a rational basis for "distinguishing private clubs from other restaurants," namely, the protection of "the greatest number of restaurant patrons, while preserving the right to associate in truly private clubs that are not open to the public." Id., ¶14 (emphasis added). The court of appeals recognized that while restaurants are open to everyone in the community, i.e. "the public," private clubs are not. See id., ¶16. While the canons of statutory construction compel giving "the public" this common, ordinary, and accepted meaning, the majority instead continues the capricious approach of supplanting the text of § 100.18(1) with a judicially-preferred standard.

II

¶103 The majority perpetuates the judicially-created "particular relationship" test for determining whether a person is part of "the public" within the meaning of Wis. Stat. § 100.18(1). Majority op., ¶62. This test has no foundation in the statutory text. Automatic Merchandisers introduced the "particular relationship" test in attempting to divine "the intent of the legislature," in particular whom "the legislature intended to protect." 64 Wis. 2d at 663. The court's entire analysis in that case rests on the defective foundation of the fiction commonly

9

called "legislative intent."[6] "An interpretation based on what the legislature intended a statute to mean is improper." State v. Lopez, 2019 WI 101, ¶39, __ Wis. 2d __, 936 N.W.2d 125 (Rebecca Grassl Bradley, J., concurring). Aside from the impossibility of assigning a collective "intent" motivating a body of individual lawmakers, "[i]t is the enacted law, not the unenacted intent, that is binding on the public." Kalal, 271 Wis. 2d 633, ¶44. "It is the law that governs, not the intent of the lawgiver[,]" and "[m]en may intend what they will; but it is only the laws that they enact which bind us." Id., ¶52 (emphasis omitted) (quoting Antonin Scalia, A Matter of Interpretation: Federal Courts and the Law 17 (Princeton University Press 1997)). "[I]t is the text's meaning, and not the content of anyone's expectations or intentions, that binds us as law." Id., Lawrence H. Tribe, Comment in Scalia, A Matter of Interpretation at 66; see also Winebow, Inc. v. Capitol-Husting Co., 2018 WI 60, ¶40, 381 Wis. 2d 732, 914 N.W.2d 631 (Rebecca Grassl Bradley, J., dissenting) ("[L]egislative intent behind enactment of a law . . . cannot govern statutory interpretation. Rather, our analysis must focus on the statutory language itself[.]"); State v. Grandberry, 2018 WI 29, ¶55, 380 Wis. 2d 541, 910 N.W.2d 214 (Kelly, J., concurring)

---

[6] See Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 391-96 (2012) ("[C]ollective intent is pure fiction because dozens if not hundreds of legislators have their own subjective views on the minutiae of bills they are voting on[.]"); see also Robert E. Keeton, Keeton on Judging in the American Legal System 210-11 (Lexis Pub. 1999) ("'[L]egislative intent' . . . is a legal fiction. Only a natural person can have a state of mind such as intent. No legal entity such as a legislature can have an 'intent' in a strictly factual sense.").

10

("[W]e give effect only to what the legislature does, not what it tried to do." (footnote omitted)).

¶104 Rather than displacing the actual text of the statute with a judicially-created "particular relationship" test to define "the public" in the context of Wis. Stat. § 100.18(1), courts should instead determine who constitutes "the public," based on the plain meaning of § 100.18(1). See supra ¶¶98-102. Using the "particular relationship" test in the context of § 100.18(1) inappropriately adds words to the statutory text that the legislature did not write into the law, while introducing additional ambiguity into the meaning of "the public." In construing a statute, "we interpret the words the legislature actually enacted into law" and "[u]nder the omitted-case canon of statutory interpretation, '[n]othing is to be added to what the text states or reasonably implies (casus omissus pro omisso habendus est).'" State v. Fitzgerald, 2019 WI 69, ¶30, Wis. 2d 384, 929 N.W.2d 165 (quoting Lopez-Quintero v. Dittman, 2019 WI 58, ¶18, 387 Wis. 2d 50, 928 N.W.2d 480 (quoting Scalia & Garner, Reading Law at 93)); see also Fond du Lac Cty. v. Town of Rosendale, 149 Wis. 2d 326, 334, 440 N.W.2d 818 (Ct. App. 1989) ("One of the maxims of statutory construction is that courts should not add words to a statute to give it a certain meaning." (citation omitted)).

¶105 Instead of analyzing the words the legislature actually wrote in Wis. Stat. § 100.18(1)——whether a person is a member of "the public"——courts have digressed into a consideration of whether the parties have a "particular relationship." Applying

11

this test only raises additional questions, such as whether the parties have a contractual relationship or (as Hinrichs advances) an "effective contractual relationship," thereby disconnecting the analysis even further from the actual statutory text. For example, in K & S Tool & Die Corp. v. Perfection Machinery Sales, Inc., the court stated that "a plaintiff is no longer a member of 'the public' for the purpose of § 100.18(1) once he or she has entered into a contract to purchase the offered item." 2007 WI 70, ¶26, 301 Wis. 2d 109, 732 N.W.2d 792 (citation omitted). K & S Tool & Die Corp. relied on Kailin v. Armstrong for this proposition. Id. In Kailin, the court of appeals held "[o]nce the contract was made, the Kailins were no longer 'the public' under [§ 100.18(1)] . . . ." Kailin, 2002 WI App 70, ¶44, 252 Wis. 2d 676, 643 N.W.2d 132. However, "[i]f the Wisconsin courts had intended to exclude from the law only contracting parties, it could have stated the rule as whether the parties had a 'contracting relationship,' but they have employed the more general language, 'particular relationship.'" Uniek, 474 F. Supp. 2d at 1039. This muddying of the plain language of the statute prompted one federal court, struggling to discern a clear rule of law by which to apply § 100.18(1), to "question whether" Wisconsin courts' adoption of the extra-textual "particular relationship" test "leads to the most logical distinctions between those plaintiffs that fall within the statute and those that are excluded." Id. It doesn't, but returning to the proper plain meaning approach certainly would.

III

12

¶106 Even if Hinrichs did constitute a member of "the public" under Wis. Stat. § 100.18(1), Dow's statement to Hinrichs cannot be deemed "untrue, deceptive or misleading," as required by the statutory text. The majority does not address this requirement in its analysis of § 100.18(1). See majority op., ¶¶57-71. Nothing in the Complaint creates even an inference of this element. The Complaint characterizes as "untrue, deceptive or misleading" Dow's statement that "[n]o evidence of any crazing or surface cracking was observed." Complaint, ¶¶24-25 (emphasis added). Hinrichs does not allege that Dow disclaimed its adhesive as the cause of the cracking. To the contrary, Hinrichs alleges Dow advised "we are assisting in determining the root cause of the issue and apologize for the inconvenience." Complaint, ¶27. Hinrichs alleges only that Dow stated it did not observe any crazing or cracking during testing. Nothing in the Complaint supports even an inference that at the time Dow made this statement, it knew the statement was "untrue", or that the statement was "deceptive or misleading." Accordingly, Hinrichs' § 100.18(1) claim should not be allowed to proceed.

IV

¶107 The plain meaning of "the public" under Wis. Stat. § 100.18(1), as confirmed by dictionaries, common parlance, and cases, means people in the general community, not businesses in an ongoing commercial relationship. "On its face, a statement made to 'the public' suggests an attempt to communicate with a large audience rather than a private message directed at one party." Uniek, 474 F. Supp. 2d at 1037 (citing to an additional dictionary

13

beyond those mentioned in ¶99, referring to "public" as a collective entity).  As the majority acknowledges, statutory interpretation presents a question of law and it is therefore beyond the province of the factfinder to determine the meaning of "the public" as used in § 100.18(1). Majority op., ¶26 ("Statutory interpretation likewise presents a question of law we review independently . . . .").  As a matter of law, Hinrichs was not a member of "the public" under § 100.18(1) when Dow made the statement Hinrichs alleges to be a misrepresentation because Dow directed the statement to Hinrichs alone, not "the public" generally.  Because the majority's interpretation of "the public" empties the phrase of any meaning, I respectfully dissent.